| 33 | 161 |
| 93 | 269 |

| 33 | 161 |
| 114 | 403 |

| 33 | 161 |
| 120 | 410 |

| 33 | 161 |
| 137 | 649 |

| 33 | 161 |
| 142 | 138 |

---

## EDMUND V. HATHAWAY *v.* WILLIAM H. DAVIS AND ALLEN H. PHILLIPS.

ATTACHMENT LAW. — An undertaking on appeal is an express contract for the direct payment of money in the sense of the statute in relation to attachments.

WHEN ATTACHMENT SHOULD BE DISSOLVED.—If the complaint states no cause of action, and does not admit of amendment, the attachment should be dissolved.

IDEM.—If the complaint can be made good by amendment, the plaintiff should be allowed to amend, pending the motion to dissolve the attachment.

COSTS IN THIS COURT.—Costs in this Court follow the judgment unless otherwise specially directed by the Court.

DAMAGES IN THIS COURT.—Damages for a frivolous appeal, given by the three hundred and forty-eighth section of the Practice Act, cannot be recovered in an action upon the undertaking on appeal, unless they have been specially awarded by this Court.

DEFENCE TO ACTION UPON UNDERTAKING ON APPEAL.— If the appeal has been considered by the appellate Court, and the judgment below affirmed, a want of jurisdiction on the part of the appellate Court cannot be shown in defence to an action upon the undertaking on appeal.

DEATH OF A SURETY ON UNDERTAKING ON APPEAL.—If one of the sureties on an undertaking on appeal dies before suit, the respondent does not forfeit his right of action against the other sureties by failing to present his claim against the estate of the deceased surety.

Appeal from the District Court, Fifteenth Judicial District, City and County of San Francisco.

Plaintiff recovered judgment in the District Court of the Fifteenth Judicial District, November 17th, 1862, against one Lewis Brady, for ten thousand and eighty-seven dollars and fifty cents. Said Brady, on the first day of December, 1862, filed in said Court his notice of appeal to the Supreme Court from said judgment, and from an order of said District Court denying his motion for a new trial in said action. On the same day the defendants and one Leland executed, on behalf of Brady, their undertaking on appeal to the Supreme Court from said judgment. Said Brady filed this appeal bond with the Clerk of said District Court December 3d, 1862. Pending said appeal, the judgment appealed from was stayed until the affirmance of the same, and of the said order of the District Court denying the motion of the said Brady for a new trial, by the Supreme Court, and the remittitur from said Supreme Court in said appeal was filed with the Clerk of said District Court; all of which was accomplished November 4th, 1863.

In the month of January, 1864, said Leland departed this life, and in the month following, one Henry Hale was lawfully appointed executor of his last will and testament.

This action was commenced January 12th, 1867, and in his complaint plaintiff demanded judgment for nine thousand four hundred and ninety dollars and twenty-one cents, being the portion of said judgment appealed from then unsatisfied, and interest thereon, also the sum of sixty-six dollars and fifty-five cents, costs of Supreme Court on said appeal, with interest thereon.

After the commencement of this action, plaintiff procured a writ of attachment against the property of defendants to be regularly issued and levied upon their property, to secure the payment of any judgment against them he might thereafter recover.

Defendants moved said District Court to dissolve said attachment upon the grounds, to wit:

"1st. Said action is not an action upon a contract, either express or implied, for the direct payment of money, and the defendants are both residents of this State.

"2d. The complaint herein does not state facts sufficient to constitute a cause of action.

"3d. It appears from the complaint herein, that there was no consideration for the second supposed undertaking or promise contained in the instrument upon which this action is brought.

"4th. It does not appear from said complaint that there has been any breach of either or any of the conditions in said instrument contained.

"5th. It does not appear from plaintiff's complaint that the defendants, or either of them, are liable upon said instrument; but it appears therefrom that said defendants are not, nor is either of them, liable thereon."

The motion was denied by said District Court, to which defendants duly excepted, and appealed.

The other facts are stated in the opinion of the Court.

*R. R. Provines,* for Appellants, argued:

The writ was improperly issued, because:

First—The contract sued on is not one for the payment of *money,* but that this action is one, in the strictest sense, to recover damages, the amount of which cannot be gathered from the instrument itself, and was unascertainable at the time of its execution; and cited, as the judicial exposition of the phrase "for the recovery of money only" and "for the payment of money only" used, Secs. 129 and 146 of the N. Y. Code; 6 How. Pr. 310; 8 Ib. 504; 7 Ib. 237; 14 Ib. 359; 1 Code R. 126; 1 Duer, 647; Ib. 602.

Second—The contract sued on is not one "for the *direct* payment of money;" the word "direct" is used as the oppo-

site of *indirect, oblique, uncertain, doubtful, contingent, conditional.*

Third—The appeal from the judgment appealed from was a nullity, because the time limited by statute for that purpose had expired before it was taken ; hence, there was no consideration for the second promise or undertaking contained in the instrument sued on, and cited 20 Cal. 141 ; 28 Ib. 416 ; 31 Ib. 207 ; 2 McLean, 511 ; 11 N. H. 191 ; 4 Scam. 364 ; 6 How. Miss. 106.

*W. W. Crane,* for Respondent, argued :

That as between the respondent and appellants, there was a contract for the direct payment of money ; the amount to be paid to be determined by the future action of the Supreme Court. That Court having affirmed the judgment, the liability became fixed and conclusive; and cited *Rockfeller* v. *Donelly,* 8 Cow. 622 ; *Chase* v. *Hinman,* 8 Wend. 452 ; *Thomas* v. *Allen,* 1 Hill, 145 ; *Baggott* v. *Boulger,* 2 Duer, 170 ; *Gilbert* v. *Wimans,* 1 Coms. 550 ; *Riddle* v. *Baker,* 13 Cal. 305–6 ; *Pico* v. *Webster,* 14 Cal. 204 ; *Tissott* v. *Darling,* 9 Cal. 285 ; *Dore* v. *Covey,* 13 Cal. 508 ; *Heebner* v. *Townsend,* 8 Abbott Pr. 237 ; *Wood* v. *Derrickson,* 1 Hilton, 410. That the contract was substantially this : Davis and Phillips promised Hathaway that Brady would pay the amount of the judgment against him if it was affirmed, and if Brady did not they would. In legal effect it was a direct contract to pay money to Hathaway—the precise amount, however, depending upon the action of the Supreme Court. If expressed in these words, " We will pay the sum of ten thousand and eighty-seven dollars and fifty-two cents damages, and one hundred and thirty-seven dollars and forty cents costs of suit, besides the costs of the Supreme Court, to E. V. Hathaway, provided the judgment against Lewis Brady is affirmed," it would only be the legal equivalent of the actual terms of the undertaking. The contingency as to the affirmance does not destroy the *directness* of the promise to pay a given amount of money

any more than the contingency, that the maker of a promissory note does not pay, affects the directness of the indorser's contract with the holder.

Though the attachment law is strictly construed, when scrutinizing the mode of procedure under it, yet when determining as to the class of cases within its purview, it is justifiable to construe it liberally, so as to enlarge rather than restrict the remedy; and cited *White* v. *Steam Tug Mary Ann,* 6 Cal. 470 ; *Lenox* v. *Howland,* 3 Caine, 323. If the respondent voluntarily stayed proceedings, the appellant gained the advantage which he sought by his undertaking. But the sureties are estopped from denying the jurisdiction of the Supreme Court; and cited *People* v. *Falconer,* 2 Sandf. 81 ; *The Cumberland Coal and Iron Co.* v. *Hoffman Steam Co.* 15 Abbott's Pr. 78 ; *Morse* v. *Hudson,* 5 Mass. 316 ; *People* v. *Carpenter,* 7 Cal. 403 ; *People* v. *Edwards,* 9 Cal. 286 ; *Dore* v. *Covey,* 13 Cal. 508 ; *People* v. *Wolff,* 16 Cal. 385 ; *People* v. *Shirley,* 18 Cal. 121 ; *McMillan* v. *Dana,* 18 Cal. 339. The Supreme Court took jurisdiction and affirmed the judgment, thereby not only deciding the errors assigned, but also deciding that it had jurisdiction. This is conclusive in all collateral proceedings ; and cited *Clary* v. *Hoagland,* 6 Cal. 688 ; *King* v. *Poole,* 36 Barb. 24.

By the Court, SANDERSON, J.:

This is an appeal from an order denying a motion to dissolve an attachment. The action is against sureties on an appeal bond, which is in the ordinary form of an undertaking on appeal where a stay of proceedings is sought. It contains two premises. 1st. "That the appellant will pay all the damages and costs which may be awarded against the defendant on the appeal, not exceeding three hundred dollars ;" and, 2d. "That if the judgment appealed from, or any part thereof, be affirmed, the appellant shall pay the amount directed to be paid thereby, or the part of such amount, as

to which the same shall be affirmed, if affirmed only in part, and all damages and costs which shall be awarded against the appellant upon the appeal." The question presented is whether this undertaking is a "contract for the direct payment of money" within the meaning of the one hundred and twentieth section of the Practice Act relating to attachments.

The language of the statute is that a plaintiff may have an attachment "in an action upon a contract, express or implied, for the direct payment of money," etc.

So far as we are advised this precise language is peculiar to our statute. We do not find it, nor language substantially like it, in the statutes of any other State to which our attention has been called, and we find no little difficulty in coming to a satisfactory conclusion as to the precise meaning which the Legislature intended to convey by its use. It is very clear that the cause of action must be for the recovery of money only, and must arise out of contract, either express or implied; and it is equally clear that an attachment is not allowed in all cases arising out of contract where compensation in money can be recovered. It is further apparent that the distinguishing features lie in the words "direct payment." The defendant must have contracted for the "direct payment of money," or his goods cannot be attached. But what does "direct payment" mean?—or what does indirect payment mean? Whoever undertakes to answer these questions in a manner at all satisfactory to himself will first come to the conclusion that the Legislature has expressed its will in language not a little obscure. The Legislature is said to employ words not technical in their ordinary and popular sense.

What meaning would the unprofessional man give to the words in question? As to the word "payment," he would answer promptly: "it is the delivery of money by one person from whom it is due to another person to whom it is due," but when he undertakes to draw the distinction between a direct and an indirect delivery of money he will not answer so readily, if at all. "Direct" means straightforward, not crooked, not winding, not circuitous, not side-

ways, not oblique. Apply these various terms to the description of a payment and we reach no intelligible result. What is a "crooked payment," a "winding payment," a "circuitous payment," an "oblique payment?" Is not every payment necessarily "direct" and "straightforward?" If the debtor grumbles, or haggles, or hesitates, it may be said, in a certain sense, that the payment is not straightforward when it comes to be made, but the question is as to his promise, and not as to the manner of its performance. It is obvious that the sense of the word, as used in common speech, does not afford much aid. In the law of descents we find the word "direct" used as the opposite of "collateral."

In the law of contracts we find the word "collateral" used, and if the word "direct" qualified the word "contract" so as to make the statute read, "on a direct contract for the payment of money," we might, with some reason, hold that it was used as the opposite of collateral and that all contracts of a collateral character are not within the statute; but it does not, and to hold that it has that effect in its present place would be to violate one of the plainest usages of our language. A collateral contract or promise may be for the direct payment of money, for aught we can perceive, as well as the principal promise, and hence the distinction, whatever it may be, cannot lie between them. It follows that the word "direct" has been used in some unnatural or strained sense and must be entirely disregarded unless we find something in the context or general policy of the Act which will serve to illustrate the sense in which it is used. We think a clue is afforded in the next section (one hundred and twenty-one) where the plaintiff is required to make a certain affidavit in order to procure an attachment. He must be able to swear, among other things, that the defendant is indebted in a certain sum, specifying the amount. This language excludes all causes of action for unliquidated sums of money; for, until they have been liquidated by the verdict of a jury, it is impossible for the plaintiff to swear to the amount, and confines the right of the plaintiff to an attach-

ment to cases of contract, where the liability of the defendant can be ascertained with certainty and is not in doubt until after a trial, or, in other words, where the amount to be paid is fixed by the terms of the contract, or can be readily ascertained from the information which it affords. Every such case is clearly within the policy of the Attachment Law, which is designed for the benefit of acknowledged creditors, and not those who may or may not turn out to be such according to the finding of a jury. In such cases the payment, which has been promised, in a certain sense, may be said to be direct. While this view is not very satisfactory, it is more so than any other which finds color in the ambiguous words of the statute. There is certainly no reason why an attachment should be allowed in an action upon a promissory note, which is not equally persuasive in the present case. The plaintiff can swear to the amount due with equal accuracy, and his right to recover is as clear, and his claim upon the law for the advantages of this remedy no less reasonable and just. True, the contract does not specify the precise amount to be paid, but it points directly to the instrument or record which does, which is all that is required.

To read " direct " as the opposite to " collateral," would be to create a distinction of very doubtful foundation and certainly opposed to the general policy of the Act. To so read it would be to exempt all collateral contracts from the operation of the Act. Indorsers, guarantors, sureties and all others who undertake to pay or become responsible for the debts of another could not be reached by attachment; and yet there can be no good reason why they should be excepted. We are of the opinion that the Legislature intended no such distinction.

The claim that the complaint does not state a cause of action, and that the attachment should have been dissolved for that reason, cannot be sustained. Unless the complaint shows upon its face that the plaintiff has no cause of action with the help of an amendment, the attachment should not be dissolved. If the complaint is defective merely, and can

be made good by amendment, the plaintiff should be allowed to amend before the decision of the motion to dissolve ; but if the complaint is incurable the attachment must be dissolved. So far as the complaint fails to allege that the costs on appeal were awarded to the plaintiff, it can be amended, conceding it to be defective ; but we think the allegation follows as a legal presumption from the allegation that the judgment was affirmed. It is not the practice of this Court to formally award costs, but they are allowed to follow the judgment as of course, and are taxed by the Clerk without formal direction from the Court. As to damages on appeal the complaint makes no claim, hence no averment of an award was necessary. Doubtless no damages were awarded. The damages referred to in the statute (Sec. 348) and in the undertaking are such as may be awarded by this Court on appeals taken for delay, as provided in section three hundred and forty-five. The case of *Tarpey* v. *Shillenberger*, 10 Cal. 390, seems to have been a case in which such damages were claimed, and it was not alleged that any damages had been awarded. Unlike costs, damages do not follow as a matter of course, but must be specially awarded by the Court, and hence, when claimed by the respondent in an action upon the appeal bond, he must aver that they were awarded by the appellate Court.

Nor is the point that the appeal from the judgment was not taken within time, and that for that reason the undertaking of the sureties was without consideration, available to the defendants. Concede that the undertaking did not operate to legally stay proceedings upon the judgment, (a point which we do not decide,) yet it in fact had that effect, and the appellants received all the benefit for which their sureties contracted, and were they allowed now to say that their undertaking was *nudum pactum*, gross injustice might be done to the plaintiff because he did not choose to act upon a doubtful right. Moreover, they cannot be allowed to question the validity of the judgment of affirmance on the score

22

of jurisdiction, or upon any other ground—it is conclusive upon them upon all the points upon which it acts. (*Irwin* v. *Backus*, 25 Cal. 214.)

There is nothing in the point in relation to Leland. His release was not the act of the plaintiff but of death, and counsel for appellants cite us to no rule of law by which the plaintiff was bound to present his claim against his estate, or forfeit all right of action against his co-sureties.

Order affirmed.


SAWYER, J., dissenting :

The undertaking upon which a recovery is sought is "that the appellants will pay all damages and costs which may be awarded against defendant on the appeal, not exceeding three hundred dollars." This appears to me to be an undertaking that another party shall pay, and not that the party himself will pay. There is no promise that the defendants themselves will pay any money at all, and consequently no contract on their part for the direct payment of money. On a failure of the appellants in the suit to pay in accordance with the terms of the undertaking, there is a breach, it is true, and the party to the undertaking is liable for damages for the breach. But the liability is strictly for damages, and not on his own contract that he himself will pay money.. For these reasons I think there was no contract, express or implied, on the part of the defendant for the direct payment of money within the meaning of the Attachment Law, and that an attachment is unauthorized.