[Civ. No. 1583.   Fourth Appellate District.—March 17, 1937.]

ALBERT BECK et al., Respondents, v. SHEPHERD FRUIT COMPANY, INC. (a Corporation), Appellant.

Albert Ford and Kelley & Hews for Appellant.

Andrew J. Copp, Jr., for Respondents.

JENNINGS, J.—For some time prior to the month of October, 1930, plaintiffs were the owners of an orange grove in Riverside County, California. This property they were willing to sell and during the month of September, 1930, the plaintiff, Albert Beck, entered into negotiations for the sale of the grove to William H. Seeley and his wife, Ina M. Seeley. These negotiations culminated in the execution of a contract in writing between plaintiffs and the Seeleys on October 6, 1930. This instrument recited that plaintiffs, as owners in joint tenancy of the real property, agreed to sell and the Seeleys agreed to buy said property for the sum of $50,000, of which the sum of $2,000, whose receipt was acknowledged, was paid in cash. A further sum of $5,000 was to be paid from the proceeds to be derived from the sale of oranges that were then growing on the property. The exact language of the agreement which provided for the payment of the $5,000 is as follows:

"Three thousand and no/100 ($3000.00) Dollars, from the proceeds of the present crop of Navel oranges, now standing and growing; and $2,000.00 from the proceeds of the crop of Valencia oranges, now standing and growing on the above-described property. Both last referred to payments to be secured by an order on the packing house." The agreement then provided that the remainder of the purchase price, to wit: the sum of $43,000 should be paid in annual instalments of $5,000 or more and that when the unpaid balance should

not exceed the sum of $43,000, plaintiffs, as vendors, would execute a deed to the property to the vendees and would take back a deed of trust on the property to secure the payment of a note or notes representing such unpaid remainder of the purchase price to be executed by the purchasers, payment of such note or notes further to be secured by a crop mortgage on all growing crops during the existence of the trust deed. The vendees agreed that they would pay all taxes and assessments levied against the property and all charges for water furnished on the land. They further agreed that they would properly care for and preserve the property and more specifically that they would provide a designated quantity of fertilizer for each tree per year and that the land should be fertilized on or before 30 days from the date of the agreement, weather conditions permitting.

The defendant, Shepherd Fruit Company, which was a corporation engaged in the business of picking, packing, and marketing fruit, had its principal office in the city of Los Angeles. It also maintained a packing house in the city of Corona of which the defendant E. R. Lewis was the superintendent with the title of district manager. F. M. Withers was the secretary-treasurer of the corporation and was acquainted with the parties to the above-described contract. As the negotiations which culminated in the execution of the contract progressed F. M. Withers was apprised of them and on September 13, 1930, addressed a letter to plaintiff, Albert Beck, in which he stated that Seeley had come to see him and discussed the proposed purchase of Beck's property and that if the deal were consummated Seeley would wish some financial assistance from the corporation to enable him to handle the matter. The writer expressed the willingness of the corporation to furnish such assistance and stated that he was informed that Beck would be willing to accept an order drawn by the purchaser on the corporation which the purchaser desired should handle the marketing of the fruit growing on the property. The letter contained a statement that the corporation would agree to have the purchaser give Beck an order for an unspecified amount to be paid by the corporation any time between October 15th and November 1st, if agreeable to Beck. The evidence which related to the negotiations between Beck and Seeley leading up to the execution of the contract indicated that Beck was unwilling to accept an order

drawn by Seeley on the defendant corporation, but insisted on payment of a portion of the selling price in cash at the time the contract was made and payment of a further amount to be derived from the proceeds of the crop of fruit, such latter payment to be secured by an order to be drawn by the purchaser on the packing house. The contract which the parties finally executed was accordingly thus drawn. It then became necessary for the purchaser, Seeley, to procure the sum of $2,000 which was required to be paid to Beck at the time the contract would be executed. Seeley accordingly went to Fresno, where F. M. Withers then was and either exhibited to him a copy of the proposed contract or informed Withers of its terms. Withers then caused a crop mortgage to be prepared which was to be executed by Seeley in favor of the Shepherd Fruit Company to secure payment of the sum of $2,000 to be advanced by the corporation to Seeley and had a check drawn by the corporation in Seeley's favor for said sum of $2,000. The check thus drawn was then turned over to Seeley, together with the crop mortgage and a letter of instruction addressed to the defendant, E. R. Lewis. This letter mentioned the execution of the check and the fact that Withers had given Seeley a marketing contract to be executed by Seeley and his wife; also, that Seeley had been given a crop mortgage to be executed by himself and wife. The letter further stated that as soon as Beck executed the contract of sale Seeley would place the same of record and Lewis was instructed to record the crop mortgage immediately afterward. The instructions thus given were followed. The contract of sale was executed on or about October 6, 1930, and the parties thereto acknowledged execution on October 15, 1930. The crop mortgage was executed at the same time the contract of sale was executed and it was likewise acknowledged on October 15, 1930. Both of the aforesaid instruments were deposited with a title company immediately after execution and were offered for recordation by the title company at the same time. The contract of sale was actually recorded immediately prior to the crop mortgage on October 20, 1930.

After the contract of sale was executed the Seeleys, as purchasers, went into possession of the property. On November 28, 1930, the plaintiff Albert Beck telephoned the defendant E. R. Lewis and advised Lewis that he did not propose to

permit Seeley to pick the fruit because he had not fertilized the grove in accordance with the terms of the contract of sale and that unless the Shepherd Fruit Company would guarantee that the grove would be fertilized and that the payments of $3,000 and $2,000 would be made as required by the contract he would bring an action to restrain the picking of the fruit and for cancellation of the contract. Lewis agreed to see to it that Seeley fertilized the grove and promised to sign a letter to that effect and to deliver it to Beck. On November 28, 1930, Lewis prepared on the stationery of the defendant corporation and delivered to Beck the following letter:

"Dear Mr. Beck:

"As per your request we the Shepherd Fruit Co. Inc. promise to abide by your contract of sale to Mr. Wm. H. Seeley of a certain parcel of land near Arlington, Calif. now growing Navel and Valencia oranges, in that we will pay to you $3,000.00 from the proceeds of the Navel oranges and $2000.00 from the net returns of the Valencias, we will also see that he pays the 1930 and 31 taxes, also fertilize as per contract of sale by Dec. 30th, 1930.

"Yours very truly,
"E. R. LEWIS, Dist. Mgr."

The fruit growing on the property was thereafter picked and marketed by the defendant Shepherd Fruit Company in accordance with the marketing agreement entered into between Seeley and the corporation. After all expenses incident to the picking and marketing of the fruit were deducted from the gross proceeds derived from sale of the fruit there remained a total amount of $1492.90 which the defendant corporation retained and applied on the $2,000 indebtedness of Seeley, which was secured as aforesaid by the crop mortgage. The taxes on the property for the year 1930–1931 were permitted to become delinquent and the property was sold to the state of California for the amount of such taxes. On June 10, 1931, the Becks, plaintiffs herein, instituted an action against the Seeleys and the Shepherd Fruit Company to quiet their title to the property. The above-mentioned defendants defaulted in appearance and on September 21, 1931, a judgment was entered in said action quieting the title of said plaintiffs to the property.

The present action was instituted on July 12, 1933. The complaint alleged the execution of the contract of sale between plaintiffs and the Seeleys with particular reference to the covenant for payment of the sum of $5,000 from the proceeds of the orange crop then growing on the property and that the two payments that would be made out of the proceeds of the crop should be secured by an order on the packing house. It was alleged that the packing house referred to in the covenant was the packing house at Corona operated by the defendants. The pleading further alleged that on November 28, 1930, the Seeleys offered to sell and deliver to the defendant corporation the orange crop subject to the covenant for payment of $5,000 to be made as above noted and that the defendants on said date agreed to accept delivery of the crop and to comply with the provisions of the aforesaid covenant and that the defendant corporation thereupon evidenced its willingness to perform its agreement by signing and delivering to plaintiffs the letter of November 28, 1930. The complaint then alleged the acceptance by plaintiffs of the promises contained in said letter and their consent to the sale and delivery of the crop induced by the statements contained in the letter and that the crop was thereafter sold by defendants for a sum which exceeded the amount of $5,000, but that defendants failed and refused to make the required payment and that the taxes assessed against the property were allowed by the Seeleys to become delinquent which rendered it necessary for plaintiffs to pay the sum of $1836.94 to redeem the property. The prayer of the complaint demanded judgment against the defendants in the amount of $6,836.94 comprising the $5,000 payment required by the contract of sale and the sum paid by plaintiffs to redeem the property. Upon the conclusion of the trial of this action the court required plaintiffs to elect whether they would seek recovery from the defendant corporation or from the defendant Lewis. Plaintiffs elected to demand recovery from the corporation and judgment was thereafter entered in favor of plaintiffs against the corporation in the amount of $1492.90 with interest as specified. In thus rendering judgment for the net amount realized from the sale of the orange crop the court allowed the defendant corporation to deduct all costs and expenses incident to the handling and sale of the crop, but refused to allow the corporation to apply the net proceeds on the promissory

note and crop mortgage for $2,000 executed by the Seeleys to secure repayment of said sum of $2,000 advanced by the corporation to the Seeleys. Within ten days after entry of judgment, the defendant Shepherd Fruit Company, Inc., gave notice that it intended to move for a new trial and also gave a separate notice that it intended to move the trial court for an order vacating the judgment. The motion for a new trial was denied on February 21, 1935, and the motion to vacate the judgment was denied on February 27, 1935. The defendant Shepherd Fruit Company, Inc., appealed from the judgment and its notice of appeal states that this defendant also appeals from the order of February 27, 1935, denying the aforesaid motion to vacate the judgment.

■ The principal contention advanced in support of the appeal from the judgment is that plaintiffs are barred from recovery in this suit by their prior action in repossessing the property which they contracted to sell to the Seeleys and by quieting their title to said property by means of the suit which they brought for this purpose in 1931. Plaintiffs, in opposition to this contention, maintain that the letter of November 28, 1930, constituted a contract entirely independent of the agreement of sale entered into between plaintiffs and the Seeleys which was supported by the consideration that plaintiffs forbore from restraining delivery of the orange crop to the defendant corporation, although the Seeleys had then failed to perform their covenant to fertilize the grove and were in default. The presentation of these conflicting contentions necessitates an examination of the contents of the letter of November 28, 1930, which was signed by the defendant E. R. Lewis.

This document states that the Shepherd Fruit Company promises ''to abide by your contract of sale to Wm. H. Seeley of a certain parcel of land near Arlington, Calif. now growing Navel and Valencia oranges, in that we will pay to you $3000.00 from the proceeds of the Navel oranges and $2000.00 from the net returns of the Valencias, we will also see that he pays the 1930 and 31 taxes, also fertilize as per contract of sale by Dec. 30th, 1930''.

It is apparent that in the brief verbiage of the communication reference is twice made to the contract of sale which is clearly designated as the contract which plaintiffs had made with Seeley. It must further be observed that the payments

of $3,000 and $2,000 are the exact amounts which the Seeleys had agreed by their contract to pay and that the source of these two payments is precisely the same as that which was specified in the sale contract. The language which refers to the payment of taxes and fertilization is modified by reference to the contract of sale. The language of the communication taken alone, therefore, impels the conclusion that it did not, as plaintiffs contend, constitute an entirely independent agreement on the part of the defendant corporation to pay the designated sums of money, but that it amounted to a guaranty by the corporation that the specified provisions of the contract relating to payments to be made on the purchase price and the payment of taxes and fertilization would be performed by the Seeleys as purchasers under the contract of sale. In this connection the words ''we will also see that he pays the 1930 and 31 taxes, also fertilize as per contract of sale by Dec. 30th, 1930'', are significant. This language is not indicative of the expression of an independent agreement by the corporation to pay taxes and fertilize. The plain meaning of the language is that the corporation intended to guarantee that the Seeleys would perform their covenants to pay taxes and fertilize ''as per contract of sale''.

Furthermore, it must be noted that the trial court did not rely solely on the language of the communication but permitted the introduction of evidence explanatory of the language. Examination of the record leaves no doubt that the plaintiffs treated the letter of November 28, 1930, as amounting to an acceptance of a ''fruit order'' by the Seeleys in favor of plaintiffs and that plaintiffs considered that performance of the specified covenants of the contract of sale relating to payment of designated amounts from proceeds of the crop and fertilization of the land and payment of taxes was guaranteed by the defendant corporation.

■ Arrival at the conclusion that the letter of November 28, 1930, did not constitute an independent contract but that on the contrary it had the meaning heretofore mentioned brings us to a consideration of the effect produced on this contract of guaranty by the prior action of plaintiffs in quieting their title to the land from any claims by the Seeleys or the defendant corporation which claims depended entirely on the contract of sale originally entered into between plaintiffs and the Seeleys.

In the first place, upon a breach by the purchasers of any covenant contained in the contract of sale the sellers, plaintiffs herein, became entitled to a choice of two remedies. They might either stand on the contract of sale and bring an action to recover the balance of the purchase price or they were entitled to treat the contract as terminated because of the breach, retain the money paid on the purchase price and repossess the property. They were not, however, entitled to seek both of these obviously inconsistent remedies, and they were consequently put to their election as to which of the two they would pursue. When, therefore, in June, 1931, the plaintiffs brought an action to cancel the contract of sale and quiet their title to the property they indicated their election to treat the contract as terminated and the decree entered in this action in September, 1931, adjudging plaintiffs to be the sole owners of the property and that all adverse claims of the defendants therein and of all persons claiming under them were invalid and quieting the title of plaintiffs in the property effectually terminated the contract. The contract of sale being thus terminated the vendees were released from their obligations under the contract. (*Cocores* v. *Assimopoulos,* 127 Cal. App. 360, 363 [15 Pac. (2d) 892] ; *California Raisin Pool* v. *Balian,* 139 Cal. App. 343, 348 [34 Pac. (2d) 227] ; *Smith* v. *Miller,* 5 Cal. App. (2d) 564, 569 [43 Pac. (2d) 347].) Since, as heretofore indicated, it is our view that the letter of November 28, 1930, signed by the defendant, E. R. Lewis, which formed the basis of the present action was not an independent contract entirely disassociated from the contract of sale but amounted to a guaranty that the Seeleys would perform their covenants under the contract of sale, it follows that plaintiffs, having elected to retain the money paid on the purchase price and to repossess the property which was the subject of the sale contract, may not now recover from the guarantors of the purchasers. (*Glassell* v. *Coleman,* 94 Cal. 260 [29 Pac. 508] ; *Frankel* v. *Rosenfield,* 95 Cal. App. 647, 650 [273 Pac. 122].)

The view which we take of the situation here presented as reflected by the transcript on appeal impels the conclusion that the defendant Shepherd Fruit Company, Inc., was entitled to apply the net proceeds realized from the sale of the orange crop on the promissory note and crop mortgage given by the purchasers under the conditional sales contract

to said defendant. Judgment should therefore have been rendered in favor of this defendant.

█ Examination of the record herein indicates that the legal effect of the motion to vacate the judgment was equivalent to a motion for a new trial. It is further evident that the ground stated for the motion to vacate the judgment has been urged as a reason for reversal of the judgment. It is our conclusion that no appeal lies from the order refusing to vacate the judgment and that the attempted appeal therefrom should be dismissed.

The attempted appeal from the order refusing to vacate the judgment is therefore dismissed. The judgment from which this appeal has been taken is reversed and upon the going down of the *remittitur* the trial court is directed to correct its findings in accordance with the views herein expressed and to enter judgment in favor of the appealing defendant.

Barnard, P. J., and Marks, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 13, 1937.