[Civ. No. 12804.   Second Dist., Div. One.   Mar. 20, 1942.]

B. G. KARN, Respondent, v. HOWARD W. WILLS et al., Defendants; ANTHONY A. ALPHIER et al., Appellants.

William E. Empey, Jr., for Appellants.

No appearance for Respondent.

YORK, P. J.—This appeal is prosecuted by Anthony A. Alphier, individually, and Alphier and Wills Tire Company, a copartnership, from an order denying their motion for the discharge of a writ of attachment. Respondent Karn has made no appearance in this court, and the following statement of facts is taken from appellants' brief and the clerk's transcript, which two documents comprise the record on appeal.

On March, 1940, defendants Alphier and Wills formed a copartnership under the name of Alphier and Wills Tire Company, for the purpose of conducting a general retail tire business. In connection therewith, respondent Karn and defendant Wills (on behalf of himself and his partner Alphier) entered into an agreement whereby Wills promised to pay to Karn ten per cent of the profits made from the business, in consideration for which Karn agreed to "have a consigned stock of tires delivered to the above address, the total amount not to exceed at any time $4,000.00." Pursuant thereto, respondent Karn entered into a written contract with defendant Fisk Tire and Rubber Company under the terms of which he guaranteed payment for all goods sold by said company to the partnership. The Fisk Company thereafter sold and delivered to the partnership a stock of tires of the value of $4,000, which

sum Wills and Alphier agreed to pay in monthly installments of $400, and executed and delivered to the Fisk Company their promissory note for $4,000. Upon default in their first monthly payment to the Fisk Company, respondent Karn brought action against Wills and Alphier, joining the co-partnership and the Fisk Company, and prayed that Wills and Alphier be compelled to pay to the Fisk Company the sum of $4,000, or in the alternative, to return the stock of tires to said company; that Wills and Alphier render an accounting of the profits made from the business, and that he be awarded a judgment against the partners for an amount equal to ten per cent of the profits realized from the business, it being alleged ·in the amended complaint that ''said Fisk Co. has orally agreed to accept said tires so sold to defendants, as aforesaid, in satisfaction of said obligation, but that said defendants Wills and Alphier have failed and refused to return said tires to said Fisk Co.''

A writ of attachment issued in connection with said suit, but none of the steps taken to procure its issuance appears in the record before this court. On June 29, 1940, the trial court denied appellants' motion to discharge the said writ of attachment.

■ Upon this appeal from the order denying such motion, appellants present the statement of the question involved as follows: ''May an attachment properly issue in an action by a surety or guarantor to compel the principal obligors to pay and satisfy the principal obligation due another, when the surety or guarantor has not paid the principal obligation, and where there is no allegation of any indebtedness due and payable to plaintiff?''

While it is admitted that section 2846 of the Civil Code permits a surety to maintain an action against his debtor after an obligation becomes due and before such surety has paid it himself, appellants maintain that such action is wholly equitable in nature, and will not support an attachment. It is further argued that ''direct payment of money'' under section 537 of the Code of Civil Procedure means that plaintiff must be suing on a money demand or indebtedness due to him.

With respect to section 2846, *supra,* which provides that a surety may compel his principal to perform the obligation when due, it is stated in 23 Cal. Jur. 1072: ''The principle underlying this statute is of equitable origin and cognizance,

and is based upon the duty of every person to perform his agreements; acting upon this consideration a court of equity enforces the actual accomplishment of a thing stipulated for on the ground that what is lawfully agreed to be done ought to be done. (*Williams* v. *Coleman,* 70 Cal. App. 400 [233 Pac. 397]; *Josephian* v. *Lion,* 66 Cal. 650 [227 Pac. 204].) Under this rule a surety may bring an action to enforce payment of the obligation by the principal without first making payment himself. (*Kreling* v. *Kreling,* 118 Cal. 413 [50 Pac. 546]; *Los Angeles Rock & Gravel Co.* v. *Coast Construction Co.,* 185 Cal. 586 [197 Pac. 941], stating that a surety against whom a judgment has been rendered, may, without making payment himself, proceed in equity against the principal to subject the estate of the latter to the payment of the debt; *Williams* v. *Coleman, supra,* holding that a surety need not defer his action until the creditor has obtained judgment against him, or until he has paid the debt.)'' (See, also, *Eastin* v. *Roberts, Carpenter & Co.,* 19 Cal. App. (2d) 567, 571 [66 Pac. (2d) 224].)

In support of their contention that an equitable action does not authorize an attachment, appellants cite the case of *Hallidie* v. *Enginger,* 175 Cal. 505 [166 Pac. 1], in which it was stated: ''And, finally, let it be remembered that our statute, and statutes like ours, grant a writ of attachment only in cases *ex contractu,* and therefore deny it, both in actions *ex delicto* and in actions where equitable relief as such is sought.'' It should be noted, however, that the Supreme Court in that case held that the cause there sued upon was an action *ex delicto* for fraud, and the decision, therefore, is not controlling here.

In *Bennett* v. *Superior Court,* 218 Cal. 153, 160 [21 Pac. (2d) 946], it is stated: ''The weight of the decisions of this state is to the effect that where the *foundation* of the action is a demand for equitable relief the attachment will not issue, but, as the authorities state, where some exercise of equitable powers, as settling accounts and striking a balance, is incidentally involved in the action the writ will issue if the pleadings warrant it. (*Hallidie* v. *Enginger,* 175 Cal. 505 [166 Pac. 1]; *De Leonis* v. *Etchepare,* 120 Cal. 407 [52 Pac. 718]; *Kohler* v. *Agassiz,* 99 Cal. 9 [33 Pac. 741].)

''*Stanford Hotel* [*Co.*] v. [*M.*] *Schwind* [*Co.*], 180 Cal. 348 [181 Pac. 780, 782], disposed of questions very similar to those presented in the instant case. One of the reasons as-

signed as grounds for discharging the attachment was that it was an action in equity. In that case the prayer of the complaint was for a temporary restraining order enjoining defendants from selling or otherwise disposing of the property involved in the bill of sale, and that the sale be declared void, and that it be decreed that the defendant held the property charged with the payment of plaintiff's claim in the sum of $3,617.60; that the property be sold, and for further and proper relief. The court points out that in that case, as in the instant case, there was no suggestion that fraud entered into the making of the contract. In discussing whether or not an attachment would lie the court said: 'If a recovery upon such a contract is the purpose of the suit, so far as the right of attachment is concerned it is immaterial whether the action be regarded as strictly legal or strictly equitable, or partly legal and partly equitable. The subdivision [subd. 1, sec. 537, Code Civ. Proc.] does not in terms prescribe that the action must be one in law, or that it may not be one in equity, or that it may not be one of either law or equity, or of both. Hence, it is not necessary in order to uphold the writ of attachment to establish the proposition that the action is either legal or equitable. *What must be established is that the action is based upon contract, either express or implied, for the direct payment of money.* It is clear that this action addresses itself to both the legal and equitable powers of the court. But that circumstance will not operate to deny the plaintiff a writ of attachment, if he is seeking recovery upon the breach of such contract. . . . Consequently, even if such an action may properly be regarded as partially legal and partially equitable, it will make no difference. The plaintiff is nevertheless entitled to a writ of attachment by virtue of the fact that he is suing for a recovery upon the contract, which is the gravamen of the action.' . . . The rule is established upon well-considered authority that if upon the examination of the complaint the gravamen of the action forces the conclusion that it is an action for the recovery of a specific sum of money upon a contract, express or implied, an attachment will issue regardless of the fact that the exercise of equitable powers of the court are also incidentally involved." (Emphasis added.) (See, also, *McCall* v. *Superior Court,* 1 Cal. (2d) 527 [36 Pac. (2d) 642, 95 A. L. R. 1019].)

The reasoning of the Bennett case, *supra,* especially the

reference and quotation from the *Stanford Hotel Co.* v. *M. Schwind Co.* opinion, is particularly applicable to the facts presented by the case here under consideration.

The contract between respondent Karn and the partnership for the delivery to the latter of a consignment of tires provides that the total amount of such consignment shall not exceed the sum of $4,000 at any time. Thereafter, the Fisk Tire and Rubber Company delivered to the partnership $4,000 worth of tires, relying upon its contract of guaranty with respondent Karn by the terms of which the latter guaranteed payment for all goods sold by said company to such copartnership. An examination of the amended complaint herein forces the conclusion that it is an action for the recovery of a specific sum of money upon an express contract, and that, therefore, an attachment will issue regardless of the fact that the exercise of equitable powers of the court is also incidentally involved.

Appellants' contention that ''Direct payment of money under C. C. P. 537, means direct to plaintiff,'' cannot be sustained because while the language ''direct payment of money'' has been held to be obscure and uncertain, nevertheless when construed in connection with subdivision 1, section 538 of the same code, the courts of this state have come to the conclusion that by the use of the word ''direct,'' the legislature ''intended merely to exclude causes of action for unliquidated sums of money, and not to exclude collateral contracts, for a collateral contract or promise may be 'for the direct payment of money' as well as the principal promise.'' (3 Cal. Jur. 415, citing *Willett & Burr* v. *Alpert,* 181 Cal. 652 [185 Pac. 976] ; *Dunn* v. *Mackey,* 80 Cal. 104 [22 Pac. 64] ; *Hathaway* v. *Davis,* 33 Cal. 161.)

For the reasons stated, the order appealed from is affirmed.

Doran, J., and White, J., concurred.