[Civ. No. 22788.   Second Dist., Div. Two.   Sept. 12, 1958.]

F. D. ROSE et al., Respondents, v. JOHN B. PEARMAN et al., Appellants.

Dolley, Jessen & Painter for Appellants.

William Strong and Alvan M. Palmer for Respondents.

ASHBURN, J.—Appeal from order discharging or dissolving attachments. Plaintiffs Rose, Anspach and O. W. Childs Company sued defendants John B. Pearman and Margaret B. Pearman for deceit in the sale to them of all the outstanding stock of Leo G. MacLaughlin Company, a corporation, seeking damages in the sum of $75,000; in a second count of the complaint they sought declaratory relief. Leo G. MacLaughlin Company is a coplaintiff and joins in seeking declaratory relief. Defendants answered, denying the alleged fraud and asserting counterclaims for payments in the nature of salary alleged to be due them under the terms of said agreement which plaintiffs allege to have been fraudulently induced. Attachments were levied by defendants upon property of the plaintiffs other than the MacLaughlin Company, later released as to Anspach, and the other plaintiffs, Rose and O. W. Childs Company, moved to discharge same upon the grounds that there was no contract for direct payment of money made by them with defendants, and that the allegations of the attachment affidavits were untrue. Upon conflicting affidavits the trial judge granted the motion and this appeal attacks that order.

The contract is in writing, dated June 26, 1956, John B. Pearman being named as seller and plaintiffs Rose, Anspach and O. W. Childs Company as buyers. Pearman agreed to sell to buyers 2,775 shares of capital stock of the MacLaughlin Company for the sum of $100,000. The contract contains certain representations and warranties upon which the fraud action is based, provides that the purchase price be paid through escrow, and includes an agreement for employment of seller John B. Pearman and his mother, Margaret B. Pearman, by said MacLaughlin Company upon the following terms: "In part consideration hereof, *the Buyers agree that they will cause MacLaughlin to employ,* and MacLaughlin by its signature hereto appended does hereby employ the Seller and Margaret B. Pearman, who have been with Mac-Laughlin for many years, as Consultants in connection with the business and affairs of MacLaughlin for a period commencing July 1, 1956, and ending December 31, 1962. . . . In consideration of said services, *the Buyers agree that they will*

*cause MacLaughlin to pay,* and MacLaughlin by its signature hereto appended does hereby agree to pay to the Seller and Margaret B. Pearman the sum of $100,000.00 in the following manner: An amount equal to 10 per cent of the gross sums received by MacLaughlin as insurance commissions commencing at July 1, 1956, and continuing until there shall have been so paid the aggregate sum of $100,000.00; provided that irrespective of the amount of insurance commissions received, *the Buyers agree that MacLaughlin will,* and MacLaughlin hereby agrees to pay to said parties not less than $7,500.00 during the period from July 1, 1956, and ending December 31, 1956, and not less than $15,000.00 during each calendar year thereafter until said entire sum of $100,000.00 shall have been paid." (Emphasis added.) It is also provided that the minimum annual payments be made in monthly instalments of $350 to Margaret B. Pearman and $900 to John B. Pearman. It is further agreed that in the event of death or incapacity of either of the Pearmans prior to December 31, 1962, the payments required by the employment agreement shall continue to be made to the incapacitated employee or the estate of the deceased employee until the entire amount of $100,000 is fully paid. The Pearmans also agree not to engage in insurance or securities business in any form or manner except on behalf of the MacLaughlin Company, and not to disclose its customer lists. Emphasis in the foregoing quotation has been supplied because those words form the heart of the present controversy.

No claim of formal defect in attachment affidavit or any procedural aspect of the attachment is made, nor is it claimed that a counterclaim will not support an attachment.. (See *Allers* v. *Beverly Hills Laundry, Inc.,* 98 Cal.App. 580, 583-584 [277 P. 237]; *Interlocking Stone Co.* v. *Scribner,* 19 Cal.App. 344, 347-348 [126 P. 178]; 1 Witkin California Procedure, § 46(c), p. 889; 5 Cal.Jur.2d § 6, p. 601.)

The argument is that plaintiffs did not agree to employ and did not employ defendants; that they merely undertook to cause the MacLaughlin Company to do so and had discharged their entire obligation when it signed the agreement in question and therein stated that it "does hereby employ" defendants and agreed to pay to them the specified sums of money. The writing will not bear this narrow construction. The employment therein provided was for a term extending from July 1, 1956 to December 31, 1962. MacLaughlin Company did employ them for that period and

when that was done plaintiffs had performed part of their undertaking. But MacLaughlin also agreed to pay defendants a total of $100,000 in monthly instalments, and plaintiffs agreed to cause MacLaughlin to do so. That undertaking could not be performed completely until the end of the employment term. Plaintiffs occupy the position of guarantors (Civ. Code, § 2787; *Beck* v. *Shepherd Fruit Co., Inc.,* 19 Cal.App.2d 590, 597 [66 P.2d 188]).

An attachment will lie upon an employment contract (*Lewis* v. *Steifel,* 98 Cal.App.2d 648, 650 [220 P.2d 769]); it is conceded by respondents that the writ would run against the MacLaughlin Company. It is equally well established that the statutory phrase, ''contract, express or implied, for the direct payment of money'' (Code Civ. Proc., § 537), embraces a guaranty. (*Hathaway* v. *Davis,* 33 Cal. 161, 167-168; *Karn* v. *Wills,* 50 Cal.App.2d 604, 609 [123 P.2d 640]; *Tyson* v. *Reinecke,* 25 Cal.App. 696, 701 [145 P. 153]; *Anderson* v. *Fidelity Union Casualty Co,* 137 Cal.App. 37, 41 [29 P.2d 865]; *Dunn* v. *Mackey,* 80 Cal. 104, 109 [22 P. 64]; *County of Monterey* v. *McKee,* 51 Cal. 255; 1 Witkin California Procedure, § 51, p. 893; 5 Cal.Jur.2d § 21, p. 620.)

In *Bringas* v. *Sullivan,* 126 Cal.App.2d 693, 697 [273 P.2d 336], it is said: ''All that is required is that the action be based on a contract calling for the payment of money. The word 'direct' as used in section 537 of the Code of Civil Procedure is surplusage, for every contract for the payment of money would be a contract for the direct payment of money. [Citations.] Direct has been defined as meaning an amount ascertainable with reasonable certainty. [Citations.] The essential and material allegation is that the money sued on is due on a contract.''

Respondents argue that the ruling should be sustained upon the theory that the affidavits warranted the trial judge in concluding that appellants have no valid counterclaim. However, this is a situation in which the affidavits have no proper place. They become pertinent where the issue is a factual one as to whether the writ has been issued in a case not provided by statute (*Kohler* v. *Agassiz,* 99 Cal. 9, 13 [33 P. 741]); exemplified by questions of whether the debt was secured (*Goldman* v. *Floter,* 142 Cal. 388, 390-391 [76 P. 58]; *Fisk* v. *French,* 114 Cal. 400, 403 [46 P. 161]); or whether security has become worthless (*Barbieri* v. *Ramelli,* 84 Cal. 174, 176 [24 P. 113]); or whether the defendant is a nonresident (*Sparks* v. *Bell,* 137 Cal. 415, 419 [70 P. 281]). But

affidavits cannot be used to negative the existence of the alleged cause of action upon which the attachment rests. ▪ The sufficiency of the complaint or the existence of merit in the attaching creditor's claim cannot be canvassed upon a motion to dissolve or discharge an attachment. (*Pacific Elec. & Mech. Co.* v. *Hardiman,* 101 Cal.App.2d 699 [226 P.2d 65] ; *Western Title Ins. etc. Co.* v. *Bartolacelli,* 124 Cal.App.2d 690, 696 [269 P.2d 165] ; *Lewis* v. *Steifel, supra,* 98 Cal.App.2d 648 ; 1 Witkin, California Procedure, § 93, p. 926.) In the Lewis case it is said, at page 651 : ''An attaching plaintiff may claim in his affidavit the maximum amount of the alleged liability of the defendant, and the fact that within these limits the claim appears to be exaggerated, does not furnish a ground for discharging the attachment, nor does the fact that there appears to be but slight prospect that plaintiff will recover anything.''

For these reasons we have assumed as a basis of this opinion that defendants have a good counterclaim, which means an absence of fraud in the negotiation of the agreement. The question of whether such is actually the case is not pertinent upon this appeal.

The order under review is reversed.

Fox, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied October 2, 1958.