**J. Wendell COOMBS et al., Plaintiffs,**

**v.**

**Charles M. HEERS et al., Defendants.**

**Civ. No. LV–2120 RDF.**

United States District Court,
D. Nevada.

Oct. 3, 1973.

---

Landels, Ripley & Diamond by John M. Anderson and Yaroslav Sochynsky, San Francisco, Cal., and Hawkins, Rhodes & Hawkins by F. DeArmond Sharp, Reno, Nev., for plaintiffs.

Lionel, Sawyer, Collins & Wartman by Stephen L. Morris and Donald W. Haley, Las Vegas, Nev., for defendants.

## MEMORANDUM OPINION

ROGER D. FOLEY, Chief Judge.

### Facts

This is a diversity action by the plaintiffs-obligees of a guaranty signed by defendants as collateral security for a loan by plaintiffs to Twin Lakes Village, Inc. The instant motion is for an attachment of personal and real property owned by defendants.

On April 10, 1972, plaintiff Mortgage Trust of America made a $6 million construction loan to Twin Lakes Village, Inc., a Nevada corporation doing business for several years prior to this transaction. This loan was secured by a deed of trust issued by Twin Lakes. Subsequently, an additional $3 million was loaned by plaintiffs to Twin Lakes, with the original note and trust deed amended to encompass the entire indebtedness of $9 million. Both the original loan and the subsequent increase were guaranteed by Charles and Carol Heers, sole stockholders of Twin Lakes, and their wives. By this guaranty defendants agreed:

"1. [To] unconditionally and irrevocably guarantee and promise to pay, when due . . . all indebtedness represented by the Note and Deed of Trust . . .

"2. [That] (t)he obligations of Guarantors hereunder are joint and several and independent of the obligations of the Borrower, and a separate action or actions may be brought and prose-

cuted against Guarantors or any of them whether or not action is brought against the Borrower . . . The obligation of each Guarantor hereunder shall not be affected by any circumstances limiting or releasing the obligation of any Guarantor hereunder.

"3. . . .

Guarantors hereby waive:

. . . . . .

(b) The right, if any, to the benefit of, or to direct the application of any security held by the Lender, including the property described in the Deed of Trust; and, until all the indebtedness, payment of which is hereby guaranteed, has been paid in full, all rights of subrogation, any right to enforce any remedy which the Lender now has or hereafter may have against the Borrower, and any right to participate in any security now or hereinafter held by the Lender;

(c) The right to require the Lender to proceed against the Borrower or to proceed against any security now or hereafter held by the Borrower or to pursue any other remedy in the Lender's power."

Plaintiffs allege that Twin Lakes has defaulted on its obligations to plaintiffs and currently owe plaintiffs $7.9 million, a balance which Twin Lakes has refused to pay; that defendants have refused to honor formal demands that they fulfill their guarantor obligation. Plaintiffs thereafter instituted this action for enforcement of the guaranty. At this time plaintiffs seek an order, pendente lite, attaching certain real and personal property of defendants.

Federal Rules of Civil Procedure 64 provides that local state law governs the availability and procedure for issuing writs of attachment which, in this case, is the recently amended Nevada Revised Statutes, Chapter 31, Sections 31.010–31.230 (amended by Act of April 26, 1973, Laws of Nevada, Chapter 665). Under Nevada's new attachment law, the Court may order the Clerk to issue a writ of attachment, following notice and hearing, in a case involving an action upon a contract for the direct payment of money where the contract is "not secured by mortgage, lien or pledge upon real or personal property situated in this state . . ." Laws of Nevada, 57th Session, Chapter 665, Sec. 3(1)(a). If the Court determines, after considering "all affidavits, testimony and other evidence presented" at the hearing on the order to show cause, that plaintiff's underlying claim against the defendant is "probably valid it shall order the clerk to issue a writ of attachment." Id., Sec. 9.

Defendants have not substantively contested the facts which support plaintiffs' underlying claim on the guaranty contract, a guaranty which is not secured by a mortgage, lien or pledge upon real or personal property. While the Nevada courts have not had occasion to comment on the issue, the California Court of Appeals has construed statutory language identical to the present Nevada statute ("action upon . . . a contract, express or implied, for the direct payment of money", id., Sec. 3) as including an action on a guaranty. Rose v. Pearman, 163 Cal.App.2d 480, 329 P. 2d 501, 504 (1958). Defendants have not challenged this interpretation, and it is most probable that such will be the Nevada position. Plaintiffs have thus established an adequate showing of facts to sustain this Court's finding of a probable validity of plaintiffs' underlying claim.

Defendants argue, however, that the "one-action" statute in Nevada, NRS 40.430, bars this action and the attachment of defendants' property in advance of exhausting the trust deed security for the Twin Lakes debt. They assert that the obligation of Twin Lakes and the obligation of the guarantors are *one* debt, that the language of NRS 40.430 that "there shall be but one action for the recovery of any debt" secured by mortgage or lien upon real estate encompasses the present circumstances, that this requires either judicial or nonjudicial

foreclosure of the trust deed before plaintiffs can pursue the guarantors, and that public policy forbids recognition of any waiver of this "right" of guarantors.

### Issues

1. *Are the obligations of debtor and guarantor blended such that a guarantor is accorded the protection of NRS 40.430 when the debtor's obligation is secured by a trust deed or other lien on real property?*

Defendants refer this Court to decisions of the Nevada Supreme Court which, in cases involving a lender pursuing the principal debtor, set out the purposes of the "one-action rule" as (1) to compel "one who has taken a special lien to secure his debt to exhaust the secured property before having recourse to the general assets of the debtor" (McMillan v. United Mortgage Company, 84 Nev. 99, 101–102, 437 P.2d 878, 879 (1968)), and (2) provide a "vehicle for efficient litigation and the prevention of a multiplicity of suits" (Nevada Land & Mtge. v. Hidden Wells, 83 Nev. 501, 504, 435 P.2d 198, 200 (1967)). Coupling these purposes with a contention that there is but one debt in issue in this case, defendants reason that:

> "It would be anomalous to prohibit recourse to the general assets of a debtor prior to the exhaustion of the specific security for the debt and yet permit at the same time recourse to the general assets of a guarantor without prior exhaustion of the security." (Defendants' Memorandum in Opposition to Issuance of Writ, p. 3.)

Such reasoning ignores the well-established separate and independent nature of a guaranty obligation, extends the coverage of NRS 40.430 in unwarranted proportion, and could well have undesirable practical effects.

A guaranty "imports the existence of two different obligations—one being that of the principal debtor, and the other that of the guarantor"; the "understaking of the former is independent of the promise of the latter; and the responsibilities which are imposed by the contract of guaranty differ from those which are created by the contract to which the guaranty is collateral." 38 Am.Jur.2d, Guaranty § 4, pp. 999–1000 (footnotes omitted); see also 38 C.J.S. Guaranty § 61. For example, "When the principal debtor is discharged under the primary contract by reasons of a defense personal to the debtor . . . the guarantor remains liable to the creditor." 38 Am.Jur.2d, supra, pp. 1095–96; see Bank of Nevada v. Friedman, 82 Nev. 417, 420 P.2d 1 (1966) (a contract of guaranty on a note was a separate contract from the note and it was possible for the bar of limitations to exist in favor of the maker of the note and not to exist as to the guarantor). Of more immediate importance, if the guaranty is absolute "that is, subject to no condition except the default of the principal debtor" (38 Am.Jur.2d, supra, at 1116), the creditor need not resort to securities given by the principal debtor before pursuing the guarantor. See Quillen v. Quigley, 14 Nev. 215, 220 (1879); Loeb v. Christie, 6 Cal.2d 416, 57 P.2d 1303 (1936); Eisendrath v. Bank of America, 118 Cal.App.2d 434, 258 P.2d 13 (1953); Henry's Drive-In, Inc. v. Ideal Rock Products Co., 171 So.2d 563 (Fla.App., 1965). See also 38 C.J.S. Guaranty § 61, at p. 219, n. 11; 38 Am.Jur.2d, Guaranty § 114, at 1120–21. The rationale of this rule, as developed by the common law, is well stated by the early New Hampshire case of Morrison v. Citizens' Nat. Bank, 65 N.H. 253, 20 A. 300, 303 (1890):

> "As between creditor and surety, it is the surety's business to see that the principal pays. The creditor's chief purpose in requiring a surety is to avoid the necessity of resorting to legal remedies against the principal, to escape the vexation and expense of litigation, and cast that burden upon another. The surety's contract is that he will himself pay the note when it falls due, and not that he will pay it

in case the payee or holder cannot by due diligence enforce payment by the principal." (Citations omitted.)

Defendants cite Elgan v. Keane Wonder Co., 34 Nev. 469, 125 P. 693 (1912), for the proposition that in all cases the security of a principal debtor must first be utilized before resorting to other security for a debt. That case did not deal with a guarantor or surety relationship, and only held that in the context of a complicated series of stock transfers and debt assignments that smacked of fraud, a creditor holding various blocks of stock of the debtor must first apply unencumbered stock to its claims, rather than transferring that stock to the debtor and applying encumbered stock to the claims. The case thus has no application here. Defendants then assert that the case of Nevada Land & Mtge. Co. v. Hidden Wells, 83 Nev. 501, 435 P.2d 198 (1967), applies their reading of *Elgan* to land cases. *Hidden Wells* merely held that in an action by a creditor against the principal debtor the creditor may select either the judicial foreclosure of NRS 40.430 or the nonjudicial foreclosure of a trustee sale under NRS Ch. 107 and then sue on the debtor's note for the deficiency. The case simply outlines remedies which are properly available against the principal debtor and did not comment on nor delimit those remedies which exist against a guarantor of the principal obligation. The rule that a creditor may first pursue an absolute guarantor has not been abrogated by any Nevada case and the only Nevada decision approaching the subject approves the rule. See Quillen v. Quigley, supra, 14 Nev. 215, at 218–20. Indeed, counsel for defendants specifically recognized the separate nature of the guarantor's obligation when, in response to a hypothetical question posed by this Court, he stated that a creditor could, under Nevada law, proceed simultaneously upon a trustee's sale of a deed of trust securing the principal obligation and a deed of trust securing a guaranty obligation, at least until the creditor had been assured of repayment.

Defendants argue that allowing a creditor to initially pursue a guarantor would provide an easy means for evasion, through sham transactions in which the actual debtor is also the guarantor, of the mandate of NRS 40.430. If such a sham were presented, the Court would find little difficulty in accepting the applicability of NRS 40.430's debtor protections. See, e. g., Valinda Builders, Inc. v. Bissner, 230 Cal.App.2d 106, 40 Cal.Rptr. 735 (1964). That is not this case. Twin Lakes, Inc., was a corporate entity long before the loan transaction with plaintiffs. The separate character of the guarantors here cannot be ignored simply because of a possibility that some future case may involve different circumstances. Further, the practical effect of defendants'. argument would be to transpose all of the protections afforded a principal debtor into the guarantor contract, simply on the basis of a fear that those protections will otherwise be evaded in some cases. Such is not the law. See discussion above. And such an approach may well prove socially undesirable. As plaintiffs pointed out in oral argument, a small corporate borrower may find it impossible to secure loan funds if corporate lenders cannot require and look to a guarantor that will remain liable in the face of a defense, such as bankruptcy, available to the principal debtor. A series of California decisions have implicitly recognized this in denying a guarantor the protections accorded the principal debtor under California's anti-deficiency legislation (CCP 580b). See, e. g., Roberts v. Graves, 269 Cal.App.2d 410, 75 Cal.Rptr. 130 (1969); Heckes v. Sapp, 229 Cal.App.2d 549, 40 Cal.Rptr. 485 (1964). *Heckes* is particularly noteworthy in that the guarantors there were also the principal officers, directors and sole stockholders of the corporate debtor.

■■ While it is true that Nevada has not enacted legislation similar to California Code of Civil Procedure §§ 2845 and 2849 (dealing in part with rights of sureties and guarantors), NRS

40.430 was not intended to include a guarantor within its ambit of protection, and the common law rights of the creditor against the guarantor, as outlined above, prevail in Nevada. Plaintiffs may properly seek attachment of the guarantors' property even though it may have a trust deed security on the underlying debtor obligation. See Kelley v. Goldschmidt, 47 Cal.App. 38, 190 P. 55 (1920), (decided prior to the applicability of the California legislation to guarantors).

2. *Is the waiver contained in the guaranty contract valid?*

With NRS 40.430 inapplicable to a guarantor, defendants' argument that public policy forbids recognition of a waiver of its protection by a guarantor is moot. It is worth noting, however, that even the relevant statutes of California may be waived by a guarantor. American Guaranty Corp. v. Stoody, 230 Cal.App.2d 390, 41 Cal.Rptr. 69 (1964), (there is no public policy reason why a guarantor may not waive, by contract with the creditor, the benefit of any security given by the principal obligor to the creditor).