# CHARLESTON.

CENTRAL ACCEPTANCE CORPORATION *v.* L. C. MASSEY *et al., Partners, etc.*

(No. 6290)

Submitted February 12, 1929.   Decided May 29, 1929.
(Rehearing Denied July 18, 1929).

*J. M. Life, Vinson, Thompson, Meek & Scherr* and *J. M. Rigg,* for plaintiff in error.

*J. H. Strickling* and *R. P. Asbury,* for defendant in error.

HATCHER, JUDGE:

In this action the plaintiff seeks to recover on the same notes sued upon in a former action between the same parties, which is reported in 103 W. Va. 689. By reference to the statement of facts there, it will be seen that the defendants sold some automobiles (thirteen in all) partly on credit, with reservation of title, etc.; that they assigned the several contracts and notes representing the deferred payments to the plaintiff; that each purchaser defaulted in his payment before as much as fifty per cent of the purchase price of the car had been paid, and that the plaintiff repossessed and retained the cars without selling them and sued the defendants for the balance due on the notes. It was held in our former decision that under section 24 of the Uniform Conditional Sales Act, as amended in 1925, the plaintiff had no right of action against the defendants, prior to a re-sale of the cars. Following our decision, which was rendered May 17, 1927, the former case was dismissed by the plaintiff in the lower court and the present action was instituted in August, 1927. The declaration herein is similar to that in the former action in all respects, except that the present declaration alleges that the repossessed cars were turned over by the plaintiff to the defendant Massey, with full authority to sell the same and apply the proceeds on the notes. A verdict was returned in favor of plaintiff for $5,185.70 which was confirmed by the trial court.

The proof in this action discloses that in the fall of 1925 and the early part of 1926 the cars were repossessed by defendants on behalf of plaintiff, or repossessed and turned over to the defendants by the plaintiff, with the plaintiff demanding payment in full of the balance due on the notes; but that power to sell the cars was withheld from the defendants (see admissions of Shinkle and Carpenter, agents of the plaintiff), except as hereinafter stated; that the defendants had no room for six of the cars, and they were stored in the Fourth Avenue Garage; that on June 30, 1926, the plaintiff gave the defendants permission in writing to sell the six cars with directions to pay the storage and hold the balance of the proceeds of the sale pending the litigation between the parties; that defendants were unable to sell them and later they were sold by the Garage for storage charges; that the defendants did sell one of the remaining seven cars, referred to in evidence as the Wright car, but that the plaintiff repossessed the car from the purchaser and redelivered it to defendants; that the representatives of the plaintiff used the Wright car to a considerable extent, and when it was finally again traded by defendants, it brought, according to plaintiff, $150.00 in cash and a used Buick car; that the cash so received was applied by defendants on the storage charges due the Fourth Avenue Garage; that it is not clear what became of the other six cars, there being evidence for the defendants tending to show that one of the cars, the Aliff car, was shipped to the plaintiff in Cincinnati, (see record pages 128 and 131), and evidence for the plaintiff tending to show that the St. Clair, the Aliff car and the Frye cars were converted by defendants to their own use.

The rights of the plaintiff are not those of the ordinary holder of negotiable notes but are closely circumscribed by the Sales Act. As fifty per cent of the purchase price of each car had not been paid, the plaintiff was under no duty to re-sell the cars (no notice requiring re-sale having been served by any buyer). See section 20. It had the option of retaining the cars as its own property. Section 23. But if it did so, the defendants were thereby relieved of liability, as under section 24 and section 22 they were liable for the

balance due only "after a re-sale". Mere delivery of possession to defendants while denying them the right of re-sale did not lower the barrier erected by the statute against the plaintiff. Such a delivery made defendants merely the agents of plaintiff as to the possession of the cars. Plaintiff's position is no stronger because of such delivery than if it had retained the cars in its own possession. The Sales Act clearly imposes on "the seller" (the plaintiff here) the duty of re-selling re-possessed property. A "compulsory re-sale" under the Act must be made within thirty days after property is retaken. See section 19. Prompt action is required for the obvious purpose of preventing a deterioration in value of the property. The Act fixes no time within which the seller must make a voluntary resale. Therefore it must be made within a reasonable time after the property is re-taken. The same reasons which require a compulsory re-sale to be made promptly require speedy action in case of a voluntary re-sale. The delay of many months in making a voluntary re-sale of repossessed property is unreasonable in the absence of satisfactory explanation. The only excuse here for the failure of plaintiff to re-sell the cars and for turning them over to defendants with power of re-sale denied, is the policy of the company (record p. 85). That policy cannot supersede the law.

Plaintiff places special reliance on a letter from defendants guaranteeing the payments due by the purchaser of the Richardson car. As endorsers of the Richardson note the defendants engaged to pay to the plaintiff the amount thereof if dishonored. See Code, Chapter 98 A, section 66. Consequently the letter added little, if anything, to the obligations of the defendants. The plaintiff did not proceed under the guarantee of the letter or the warranty of the Negotiable Instrument Law. It proceeded under the conditional sales contract. Therefore both the letter and the Negotiable Instrument Law must be read in connection with, and yield to the provisions of, the Conditional Sales Act.

Applying the provisions of the Sales Act to this case, we are of opinion that in authorizing the defendants to re-sell the six cars stored in the Fourth Avenue Garage, the plaintiff

made defendants its agents for that purpose, and that their liability in relation to those cars was merely one of agency, upon which no recovery is declared in this action; that the use by plaintiff's representatives of the Wright car constituted an election to retain that car as its own property; and that as to the other six cars, as well as to the Buick received in trade for the Wright car, the plaintiff can recover only for such cars, if any, as the defendants converted to their own use.

The judgment of the circuit court is accordingly reversed, and the verdict of the jury set aside.

*Reversed; verdict set aside.*