DERAMI, INC., Respondent, *v.* JOHN B. CABOT, INC., et al., Appellants.

First Department, June 7, 1948.

*Henry A. Stickney* of counsel (*Clarence U. Carruth, Jr.,* and *Flora Kirley* with him on the brief; *Rudolf Sobernheim,* attorney), for appellants.

*David W. Kahn* for respondent.

VAN VOORHIS, J. This action concerns a contract of sale by plaintiff to the corporate defendant of 34,653 1/6 dozen of 2-1/2-ounce tins of Squibb tooth powder acid neutralizer for $36,385.83. The promissory note made by the corporate defendant and indorsed by the individual defendant in this amount was merely an expression of the purchase price, coupled with the personal guaranty of the individual defendant. The goods were to be sold and delivered in accordance with the provisions of a written contract of sale in the form of a letter dated October 17, 1946, signed by the defendants and accepted by the plaintiff. The goods were to be delivered at the corporate defendant's option by installments against payment *pro tanto* prior to the maturity of the note on December 16, 1946, at which time the entire amount of the purchase price was to be paid and the entire balance of the goods delivered. The reason on account of which the said letter was addressed to the Marine Midland Trust Company of New York, instead of to the plaintiff vendor, is that the latter was previously indebted to the bank, which held as collateral the tooth powder which is the subject of this sale. It is not material that this letter was addressed to the bank, inasmuch as it received the letter and the note as agent for the plaintiff.

None of the tooth powder was actually delivered, but was held by plaintiff (or by said bank as its agent) as security for the purchase price, none of which was paid. The answer contains a separate defense alleging that said merchandise was not in marketable condition and had not been manufactured during the year 1946, as is alleged to have been warranted expressly to defendants. Defendants allege that they were not obligated to pay by reason of the breach of warranty above described. They had some difficulty in making their proofs on the point that the tooth powder in question was manufactured prior to 1946, and the trial court made no

finding of fact upon this point. This appeal is decided on the basis that breach of warranty was not established on the first trial, but inasmuch as there must be a new trial for other reasons, defendants will have another opportunity to establish their defense of breach of warranty.

The purchase price was due and delivery to have been completed, as above stated, on December 16, 1946. On January 13, 1947, plaintiff wrote to defendants reminding them that nothing had been paid, stating: "We are accordingly writing to you to say that unless we receive payment of your note by 2 P.M. of Wednesday, January 15th, any transfer of title that may have heretofore been made to you of the goods shall be deemed rescinded, and that we shall thereupon resume the property in the goods and proceed with the sale thereof at the best possible price, holding you liable for all loss occasioned by your breach of the contract for the purchase of these goods."

No payment was made, so that plaintiff's election to rescind took effect January 15, 1947. Both sides agree that this letter was intended to rescind the contract pursuant to section 142 of the Personal Property Law. Under that section, after rescission, "The seller shall not thereafter be liable to the buyer upon the contract to sell or the sale, but may recover from the buyer damages for any loss occasioned by the breach of contract or the sale."

After making this election to rescind, plaintiff could no longer sue for the purchase price under section 144 of the Personal Property Law (*Dunlop's Sons, Inc.,* v. *Alpren,* 214 App. Div. 339). The measure of damage for loss occasioned by the breach of this contract, the right to recover which survives rescission under section 142 of the Personal Property Law, appears to be the same as that which is provided by section 145 in case of nonacceptance of the goods: "Where there is an available market for the goods in question, the measure of damages is, in the absence of special circumstances, showing proximate damage of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept." (Subd. 3.)

If there is no available market for the goods in question, the measure of damages is provided by subdivision 2 as "the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract."

In this case the plaintiff resold the entire amount of this tooth powder on January 16, 1947, to a concern known as Formula T Laboratories at ten cents a dozen tins. Thereafter, obtaining a better offer, plaintiff paid $2,581 to Formula T Laboratories to be released from this commitment, and resold about three fourths of the tooth powder to Malaya & Java Agency at a price of sixty cents per dozen on February 10, 1947. The judgment appealed from awards to plaintiff the difference between the contract price and the amount realized from the resale of this portion of the goods to Malaya & Java Agency after deducting expenses and the amount paid to Formula T Laboratories.

In making this disposition of the case, the trial court appears to have proceeded as though the action were brought to recover the purchase price of the merchandise which had been sold to defendant, instead of being based upon a rescission of the contract of sale. On such a theory the plaintiff would hold the goods as bailee for the account of the buyer, and the latter would be credited with what was realized from so much of the goods as were resold. The unsold balance would remain in plaintiff's possession for the account of the corporate defendant, whose property it would be.

In view of the election by the plaintiff to rescind, however, the property in the goods has been vested in the plaintiff, so that it is inconsistent to hold the defendant liable for the purchase price of all of the tooth powder while plaintiff still retains title to a portion of it, at least, in the absence of evidence that the unsold residue is worthless. These complications require a somewhat more detailed analysis of the law which is applicable to this situation.

Since after recission the property in the entire merchandise remained in the plaintiff, the plaintiff was not in a position to resell the whole or any part of it for the account of the defendant. The defendant was not liable to pay the purchase price as such. The only relevance which any resale could have would be to furnish evidence of market value, in event there was an available market for the goods, or, if there was no such market, then to aid in determining what was the loss directly and naturally resulting from the buyer's breach of contract.

The burden of proof is upon the plaintiff to show whether there is an available market, and, if so, that the market value is less than the contract price (2 Williston on Sales, § 582). Likewise, " as the market price varies, with time and place, it is essential to fix upon the market price at the time and place

provided " for performance in the contract. That means that it was incumbent upon the plaintiff to establish that the resale price to Malaya & Java Agency on February 10, 1947, represented the market value on the performance date of December 16, 1946, which was the maturity date of the promissory note which had been given as evidence of the purchase price.

Even if the case had been tried upon that theory, there are two fatal objections to regarding this resale as evidence upon that point in the absence of supporting testimony in the record. The first is that there is no testimony in the case by anyone familiar with the business concerning whether there was an available market for the goods. If there was no such market, the price on resale could not be regarded as evidence of market value. It is apparent that plaintiff's president, who was the only witness that plaintiff called upon the subject, was not familiar with market conditions in a field which was out of his line of business. The second reason on account of which this resale figure cannot be accepted as representing the market value for the purpose of computing plaintiff's damages, is that market value on February 10, 1947, has not been shown to be evidence of what it was on the performance date of December 16, 1946. The purchase price under the contract in suit was $1.05 per dozen on October 17, 1946; there is no more basis in the record for holding that the price of sixty cents a dozen upon the single sale of February 10, 1947, represented the market on December 16, 1946, any more than did the $1.05 per dozen price on October 17, 1946, nor, for that matter, the sale to Formula T Laboratories at ten cents a dozen on January 16, 1947. Cases can be found on the point that prices realized on resale, while not necessarily indicative of the market price, are some evidence thereof (*Duncan v. Woh, South & Co.,* 201 App. Div. 737; *Hayes v. Durham,* 194 App. Div. 848, 851, cf. opinion by LEARNED HAND, in *Farish Co. v. Madison Distributing Co., Inc.,* 37 F. 2d 455, 457–458). These decisions, or statements in the opinions to that effect, do not appear to be entirely consistent with other decisions that where damages to be recovered depend on market value, proof of a single sale is insufficient to establish the market value of the thing sold (*Graham v. Maitland,* 6 Abb. Prac. [N. S.] 327; 37 How. Prac. 307; *Matter of City of New York* [*Manhattan Ry. Co.*], 229 App. Div. 617, 629). In any event, a single sale of a portion of the goods, such as that made herein to Malaya & Java Agency on February 10, 1947, cannot be regarded as proving that there was an available market for the goods at that time in the absence of any testimony to that effect, and the

circumstances that plaintiff's president (who was not in the tooth powder business) testified that he previously offered to resell to Liggett, Woolworth, and either to the Rexall or to the McKesson & Robbins drug chain (he did not recall which) and to " various other people who we thought would be in a position to handle this large quantity of tooth powder ", fails to fill this hiatus in the proof. There is nothing to show that those firms were the principal ones who would be interested in buying that type of tooth powder, nor does the conclusion follow of itself that there was no available market for the reason that these firms did not wish to buy.

It is true that in *Farish Co.* v. *Madison Distributing Co., Inc.,* (*supra,* pp. 457–458) the opinion of the Federal court states that " It probably makes no difference whether we say that there was no such market or that there was. If the first, the case fell within subdivision 2 of section 145, and the seller could fix the damages ' directly and naturally resulting from ' the breach by a resale of the goods, if made with diligence." Although the cases cited in support of that proposition have to do mainly with actions for the purchase price where the goods are resold for the account of the buyer, it may well be that even where an unpaid seller has elected to rescind the contract of sale, in view of the reservation to him of the right to damages for the breach which is provided by section 142 of the Personal Property Law, there are circumstances under which such damages can be computed by allowing the difference between the amount realized on resale and the contract price, even though there be no available market for goods of that kind (See opinion by CALLAHAN, J., in *Farrish* v. *Harris Co.,* 122 Misc. 611, 614). The object in view is to arrive at the realizable value of the goods at the time when the contract should have been performed, and to subtract that from the contract price in order to arrive at the damages. We cannot hold, in the absence of testimony by anyone familiar with this type of business, that such damage is established on the basis of this record without being informed on whether the sale represents either the market price in case of an available market for the goods, or that the resale was a fair test of the actual value in the absence of an available market. Cases such as *Pollen* v. *LeRoy* (30 N. Y. 549, 557), which are sometimes cited as holding that there is a presumption of regularity regarding resales of goods by unpaid sellers, and that all that is necessary to be shown is good faith on the part of the seller, at least require proof that on the resale there was " proper observance of the usages of the particular trade ".

Here there is a total lack of evidence concerning the saleability of this tooth powder, or the trade usages in relation thereto. The lack of evidence upon these points is particularly significant in view of the inept and abortive sale to Formula T Laboratories at ten cents a dozen resulting in a redemption cost of $2,581 with which defendant has been charged, and in view of the total lack of testimony concerning the value of the 8,951 1/6 dozen tins which plaintiff still has on hand and which is plaintiff's own property in view of its having rescinded the contract. It may be noted that these latter were included in the sale to Formula T Laboratories, and that defendant has been charged with the cost of redemption thereof from that sale for plaintiff's benefit.

If there were testimony that the resale price of sixty cents per dozen to Malaya & Java Agency represented the market price in an available market as of December 16, 1946, then a corresponding value could be ascribed to the unsold powder and subtracted also from the purchase price so as to compute the damages. If there was no available market, manifestly that could not be done and other methods must be adopted, in support of which there is no evidence, in order to evaluate the unsold powder.

A new trial must be had in order to determine whether there was a market value for this tooth powder on the date specified for completion of the performance of the contract, December 16, 1946, and, if so, the amount thereof, or, if there was no market value on that date, then to determine in accordance with this opinion the loss directly and naturally resulting, in the ordinary course of events, from the defendant buyer's breach of contract. On the new trial, as above stated, defendants will have opportunity to produce whatever evidence there is to establish breach of express or implied warranty on plaintiff's part with respect to the tooth powder which had been appropriated to this contract, as a defense to any claim for damages.

The defense based on the theory of liquidated damages was properly overruled.

The judgment appealed from should be reversed and a new trial granted, with costs to appellants to abide the event.

PECK, P. J., GLENNON, DORE and SHIENTAG, JJ., concur.

Judgment unanimously reversed and a new trial granted, with costs to the appellants to abide the event. Settle order on notice.