354 P.2d 266

MAESTRO MUSIC, INC., a corporation, J. F. Cacioppo, Jr., and Lillian Marie Cacioppo, husband and wife, Appellants,

v.

RUDOLPH WURLITZER COMPANY, a corporation, Appellee.

No. 6595.

Supreme Court of Arizona.

July 14, 1960.

Rehearing Denied Sept. 26, 1960.

Cusick, Watkins & Frey, Tucson, for appellants.

Darrow & D'Antonio, Tucson, for appellee.

BERNSTEIN, Justice.

Maestro Music, Inc. (hereinafter called "Maestro") and J. F. Cacioppo, Jr. (hereinafter called "Cacioppo") (hereinafter collectively called "appellants") appeal from a judgment entered against them by the Superior Court of Pima County in favor of The Rudolph Wurlitzer Company (hereinafter called "Wurlitzer") in the sum of $36,638.68, together with attorney's fees and interest.

Pursuant to written agreements, Maestro, during the years 1952 and 1953, acted as distributor of coin-operated phonographs and accessory merchandise manufactured by Wurlitzer. The territory covered by this distributorship, at first, included Arizona, New Mexico and West Texas but subsequently was restricted to Arizona.

By separate instrument, Cacioppo, then president of Maestro, fully guaranteed all obligations and indebtednesses then or thereafter owing from Maestro to Wurlitzer. Cacioppo waived notice of presentment, protest and demand of all obligations covered by the Guaranty, which provided that

"Wurlitzer may settle, adjust, or release in whole or in part, or extend the time for payment, or release security for, any claim against [Maestro] * *, or may release in whole or in part any other obligor, endorser or guarantor of any obligation covered by this guaranty, without the consent of [Cacioppo] * * * or notice thereof to [Cacioppo] * * *, and without affecting, impairing or diminishing the obligations of [Cacioppo] * * *."

On or about December 18, 1952 Maestro sold to George Greene, doing business as American Music Company (hereinafter called "Greene"). 15 Wurlitzer phonographs and other equipment which were delivered to Greene in Odessa, Texas.

Maestro received in payment therefor a negotiable promissory note executed by Greene in favor of Maestro in the sum of $17,995.17. The note provided for interest at 6% per annum on the unpaid balance and "a reasonable sum (15%, if lawful) as attorney's fees, if placed in the hands of an attorney for collection after maturity." The phonographs and equipment were covered by a Purchase Money Chattel Mortgage, recorded in Texas. Thereafter and prior to December 31, 1952, Maestro endorsed the note to the order of Wurlitzer and by such endorsement Maestro

"hereby waive(s) presentment and demand for payment, protest and notice of non-payment and protest, and consent(s) that the holder hereof may, without notice to and without releasing the liability of [Maestro] * * * hereunder as unconditional endorser(s), compound or release any right against, and grant extension(s) of time to the maker(s)."

Wurlitzer paid Maestro the face amount of the note minus a sum which was retained by Wurlitzer in a reserve fund pending full payment of the note.

In early 1954, while Greene was in default on the note, the phonographs and equipment held by him were transferred, at Wurlitzer's instigation, to J. A. and M. V. Stevenson, doing business as Mel O Dee Music Company (hereinafter called "Stev-

·enson") in Salt Lake City, Utah. Greene paid Wurlitzer $1,500. Of this sum, $1,000 was paid to the distributor serving Utah because delivery was made into his territory; the balance of $500 was credited to Maestro's account. Stevenson executed an Assumption Agreement whereby he assumed liability for the balance of the note endorsed to Wurlitzer. There was testimony at the trial that Maestro and Cacioppo knew of and approved the transfer of the phonographs and the allocation of the $1,500.

Three other transactions are involved on this appeal. In each, Maestro sold to Stevenson certain Wurlitzer phonographs and equipment which were secured by conditional sales contracts recorded in Arizona. Stevenson delivered to Maestro three negotiable promissory notes, in the same form as the Greene note, above, in face amounts totalling $66,878.29. Maestro endorsed these notes, in the same manner as it did the Greene note, and received the face value thereof less a reserve fund. Maestro assigned the conditional sales contracts to Wurlitzer, thereby providing that

"we [Maestro] guarantee the payment promptly when due of the amount of each and every installment payable thereunder and the payment on demand of the entire unpaid balance in the event of any default by the buyer without first requiring assignee to proceed against said buyer. We

agree that assignee may audit our books and records relating to all paper assigned to it and may in our name endorse said note(s) and all remittances received, and without notice to us and without affecting our liability may release any and all rights against, enter into consolidating contracts with, and grant extensions of time of payment to the buyer. We waive presentment and demand for payment, protest or notice of nonpayment and protest, and subordinate to any rights assignee may now or hereafter have against the buyer any rights we may now or hereafter have by reason of payment to assignee of any installments payable on the contract or otherwise."

Thereafter, Stevenson made payment on the above four notes directly to Wurlitzer, which in October 1954, because of Stevenson's financial difficulties, agreed to extend the maturity dates of the notes by accepting less per month than originally required. On or about June 28, 1955, following Stevenson's continuing defaults on the notes, Wurlitzer and Stevenson entered into a letter agreement which provided, in substance, that Stevenson would deliver and turn over to Wurlitzer at their then location the 100-odd coin-operated phonographs and equipment covered by the above mortgage and conditional sales contracts, and Wurlitzer would pay Stevenson the sum of

$5,000. The agreement also provided that it constituted a "mutual release" of all claims and demands between Stevenson and Wurlitzer "of whatsoever nature," including any actions on the notes, and that Wurlitzer reserved all claims and demands it may have against any other persons or corporations who may be liable on said notes, "including but not limited to endorsers and guarantors."

Stevenson turned over the phonographs and equipment, as agreed, to Wurlitzer, which paid Stevenson the sum of $5,000. There was testimony that the agreement was fair and reasonable, and, by providing for the equipment to be turned over at each location, saved Wurlitzer from having to incur substantial repossession expenses. The record shows that Maestro was informed of this transaction and was offered an opportunity to repurchase the notes from Wurlitzer if Maestro preferred to make its own arrangements with Stevenson. The record does not show that Maestro approved or consented to the Wurlitzer-Stevenson letter agreement or the $5,000 payment.

Thereafter, Wurlitzer sold the repossessed phonographs to one or more of its distributors, and commenced this action against appellants. Wurlitzer computed its claim as follows: the unpaid balance of the original Greene note, $8,114.51 (which included credit for the proceeds of the sale of the phonographs and equipment covered by said note, the reserve fund, and $500 of the $1,500 paid to Wurlitzer by Greene); the unpaid balance of the three original Stevenson notes, $23,540.28 (which included credit for the proceeds from the sale of the phonographs and equipment covered by said notes, and the reserve fund); the cost of repossessing the phonographs, $5,220.05 ($3,000 of which represented Maestro's alleged share of the $5,000 payment to Stevenson to repossess the phonographs, only about three-fifths of which were covered by the four notes involved on this appeal; the balance of $2,220.05 represented attorney's fees and other repossession expenses). The total of $36,874.84 was reduced by the sum of $236.16, representing unearned carrying charges, leaving a net claim of $36,638.68, which, together with 15% attorneys fees and interest, was awarded in the judgment.

The judgment was supported by Findings of Fact and Conclusions of Law entered by the Superior Court following a trial held before the court without a jury. The court found, in sum, that Wurlitzer was holder in due course of each of the four negotiable promissory notes; that Maestro had waived presentment, demand for payment and protest, and all notices thereof, and had consented to Wurlitzer's compounding or releasing any right against the maker of each note; that the notes were in default in the sums claimed by Wurlitzer; that the reserve funds and the proceeds of

the sale of the phonographs, after deducting the expenses thereof, had been applied in reduction of the notes; that Maestro is liable for the net balance of the notes; and that Cacioppo is liable as guarantor of Maestro's obligation. The court also found that the instant transactions were undertaken by Maestro "voluntarily" and not "under duress or by reason of coercion."

Appellants Maestro and Cacioppo have assigned eight errors on this appeal, some of which may be disposed of briefly. They claim that Wurlitzer's operations were against public policy and amounted to business compulsion. Such contentions were rejected explicitly and implicitly by the Findings of Fact. On the basis of the record herein, we hold that there is no merit to the assignment of error based on such contentions.

Maestro and Cacioppo also contend that the transactions involving two of the notes were usurious, for the reason that the face amount of these notes, which bear interest at 6% per annum, includes interest totalling more than 10% of the total price of the phonographs and equipment, as computed in the conditional sales contracts securing these two notes. We reject this contention on two grounds. First, even if we assume that the term "Int." listed on the conditional sales contracts means interest, there was no proof that such interest had not accrued by the time such contracts were executed, and was, accordingly, properly includable in the principal debt. The burden to plead and prove usury which does not appear on the face of an instrument rests on the party seeking to avoid the instrument. See Daily Mines Co. v. Catalina Consolidated Copper Co., 59 Ariz. 149, 124 P.2d 320. The trial court implicitly found, and we agree, that appellants here did not sustain that burden.

Second, the claimed usurious notes and contracts were executed in favor of Maestro, as payee, and, accordingly, any alleged excess interest was to be paid to Maestro for its own benefit. It is clear that the defense of usury is available only to the debtor or maker, and not to Maestro, the original payee and creditor. As stated in Collister v. Inter-State Fidelity Building & Loan Ass'n, 44 Ariz. 427, 439, 38 P.2d 626, 631, 98 A.L.R. 1020:

> " * * * usury laws are enacted for the protection of needy borrowers against the oppressive exactions of money lenders and the defense of usury is purely personal to the debtor and those in privity with him and they alone may avail themselves of it, or waive it and ratify the contract in which it appears."

See also Certified Motors, Inc. v. Nolan Loan Co., D.C.Mun.App., 122 A.2d 227, where the seller-assignor of a conditional sales contract and note was sued, as here,

by his assignee and claimed that the face amount of the note included unearned charges and costs which are not recoverable by judgment in favor of the assignee. In rejecting this contention the court stated that the seller-assignor

"having sold a note purporting to represent the balance of the purchase price, is in no position to say that the note in fact represented something else." 122 A.2d at page 229.

■ We come next to the question of the effect of Wurlitzer's agreements with Stevenson on Maestro's (and, consequently, Cacioppo's) obligation to Wurlitzer. The record shows that Wurlitzer, first, extended the time by which Stevenson was obligated to make payment on the notes and, subsequently, released Stevenson from all liability thereon. It is not disputed that such conduct on the part of Wurlitzer would, in the absence of the special consents of or waivers by Maestro, effectively release Maestro as endorser and guarantor. See A.R.S. §§ 44–520, 44–524, 44–525.

Here, however, Maestro not only waived presentment, demand, protests and notices thereof, but also agreed to be liable on the notes even if Wurlitzer did "compound or release any right against" the maker or did "grant extension(s) of time to the maker(s)," and agreed to be liable as guarantor of the conditional sales contracts even if Wurlitzer did "release any and all rights

against, enter into consolidating contracts with, and grant extensions of time of payments to the buyer." Such provisions are not claimed to be invalid, and are proper. See Britton, Bills and Notes, §§ 291, 293; 7 Am.Jur., Bills and Notes, § 195.

Thus, whatever may otherwise have been the effect of Wurlitzer's agreements with Stevenson, they come within the express provisions of the three notes of which Stevenson was the maker and of the conditional sales contracts under which Stevenson was the buyer; and they do not operate to release or discharge Maestro.

■ Appellants' claim that Wurlitzer's agreements with Stevenson constituted an accord and satisfaction overlooks the point that such agreements were made with Stevenson and thus could not operate as an accord and satisfaction with Maestro, which had consented in writing to Wurlitzer's releasing Stevenson. Further, the provision in the agreement by which Wurlitzer expressly reserved all claims and demands against "endorsers and guarantors," negatives an intention to effect a satisfaction of Maestro's obligations and precludes Maestro's being discharged. See A.R.S. § 44–520.

■ The chattel mortgage and related promissory note, executed by Greene as mortgagor and maker and by Maestro as mortgagee and payee, require a different

analysis. The note was endorsed to the order of Wurlitzer by Maestro which agreed to be liable if Wurlitzer released or granted extensions of time to the "maker(s)." So far as appears from the record the mortgage was never assigned by Greene. Although Stevenson, at the time the phonographs and equipment were delivered to him, executed an agreement with Wurlitzer assuming Greene's original obligation, the record does not show that Greene was ever released from its obligation as maker of the note.

The result is that Greene and Maestro are the only parties liable, primarily or secondarily, on the note itself. Stevenson's obligation arose from a separate Assumption Agreement which was not endorsed on or made part of the mortgage or note. It follows that the agreements entered into between Wurlitzer and Stevenson did not result in an alteration of the note (see A.R.S. § 44–524) and did not, without more, affect the obligations of Greene or Maestro arising under the mortgage or note. Thus, neither Greene nor Maestro was released from liability on the note or chattel mortgage as a result of Wurlitzer's releasing or extending time to Stevenson.

We hold that Wurlitzer's agreements with Stevenson did not release, discharge or satisfy Maestro's obligations to Wurlitzer under the conditional sales contracts, the mortgage or any of the notes.

There remains for discussion the question of the effect of the manner in which Wurlitzer sold the repossessed phonographs and equipment. Appellants Maestro and Cacioppo claim that they were relieved from liability by virtue of Wurlitzer's failure to comply with the resale provisions of A.R.S. § 44–319 of the Uniform Conditional Sales Act.

Appellants have limited their argument on this issue to the three conditional sales contracts, and have not urged that the resale provisions of the Uniform Conditional Sales Act are applicable to the chattel mortgage. Indeed, no contention was made at the trial or on this appeal that the chattel mortgage, recorded in Texas and covering phonographs and equipment originally located there, was subject to the provisions of the Arizona Act. Nor was evidence offered at the trial to prove the applicable statutory law of Texas, as is required (see Bache v. Bache, 33 Ariz. 45, 262 P. 11), or that under Texas law Wurlitzer had a duty to resell the phonographs in a specified manner. There is, accordingly, no basis upon which we may consider the effect on the chattel mortgage or note of Wurlitzer's noncompliance with the resale provisions of the Arizona Uniform Conditional Sales Act.

With respect to the conditional sales contracts, A.R.S. § 44–323 provides that where there is "no resale * * * the buyer shall be discharged of all obligation."

Appellants claim that as there was "no resale" here in the manner prescribed in A.R.S. § 44–319, the buyer, Stevenson, was discharged, and Maestro, as the party secondarily liable, was likewise discharged. The record shows and, indeed, it is conceded that the sale made by Wurlitzer did not conform to the provisions of the Uniform Conditional Sales Act. Thus, in the absence of the special circumstances hereinafter discussed, Maestro would be relieved from liability, because the absence of a resale as prescribed by the Uniform Conditional Sales Act would discharge both Stevenson (see A.R.S. § 44–323) and Maestro (see A.R.S. § 44–520). See also Commercial Credit Co. v. Phoenix Hudson-Essex, Inc., 33 Ariz. 56, 61, 262 P. 1; Ulster Finance Corp. v. Schroeder, 230 App.Div. 146, 243 N.Y.S. 682, 684.

The question appropriate to the instant case is whether—where the buyer has validly waived resale or was released from liability prior to the time a resale would otherwise have been required, or indeed, where the seller-assignor has, in effect, consented to be liable in the absence of a statutory resale—the seller-assignor is liable despite the noncompliance with the resale provisions of the Uniform Conditional Sales Act. We conclude that the seller-assignor continues to be liable in such circumstances.

The essential point is that the resale provisions, here involved, of the Uniform Conditional Sales Act confer rights only on the *buyer* under a conditional sales contract. As stated in Bogert, Commentaries on Conditional Sales, 2A Uniform Laws Annotated, § 117:

> "It was the intention of the draftsmen of the [Uniform Conditional Sales] Act to provide in sections 19 to 23 [containing the resale provisions enacted in A.R.S. §§ 44–319—323] a foreclosure sale system, for the purpose of protecting the equity of the conditional *buyer* and insuring the return to him of such proportion of his part payments as are equitably due him". (Emphasis added.)

In O. S. Stapley Co. v. Rogers, 25 Ariz. 308, 313, 216 P. 1072, 1074, this Court stated:

> "The purpose of the law was to protect the buyer, the seller in such transactions not usually needing protection."

See also Waverly, Sayre & Athens Transp. Co. v. General Motors Truck Co., D.C., 36 F.Supp. 285, 286, where the court said:

> "The provisions for resale * * * are there for the protection of conditional vendees from oppression by their vendors * * *."

Nowhere in the resale provisions, or indeed in any part of the Act, is a guarantor, endorser or seller-assignor, such as Maestro, referred to or accorded any rights or bene-

fits. Thus, only the buyer is entitled to personal notice of the sale (A.R.S. § 44–319); only the buyer may demand a resale (A.R.S. § 44–320); and only the buyer is entitled to the balance of the proceeds after the resale (A.R.S. § 44–321).

▮ The statutory definition of a "buyer" to include "the person who buys or hires the goods covered by the conditional sale, or any legal successor in interest of such person" (see A.R.S. § 44–301, subd. 2), clearly does not include the seller, either before or after he has assigned his rights and interest to a third party. The fact that the seller may assign his rights as seller and agree to be secondarily liable for the unpaid balance of the underlying obligation does not convert his position into that of the buyer and entitle him to the benefit conferred by the Act upon the buyer.

Our decision in Pacific Finance Corp. of California v. Burkhart, 56 Ariz. 383, 108 P.2d 380, is authority for the proposition that the seller-assignor is not the "buyer" within the meaning of the Uniform Conditional Sales Act. There, the defendant seller under an automobile conditional sales contract assigned all its interest thereunder and agreed that if the assignee were to retake possession of the automobile from the purchaser and deliver it to the seller, the seller would be liable to the assignee for the unpaid balance of the contract. After the purchaser defaulted on the contract, the

assignee retook the automobile and delivered it to the seller. In reviewing the effect of the above transactions the Court stated:

"The defendant in the assignment in the case at bar agreed, if the property was repossessed and delivered to him, which of course under the rule of the Commercial Credit Co. case, supra [33 Ariz. 56, 262 P. 1], would discharge the purchaser from any further liability, that he himself would assume the payment of the obligations of the purchaser. This is more than a guaranty; it is an independent agreement to become the principal debtor under the circumstances set forth in the assignment." 56 Ariz. at page 391, 108 P.2d at page 383.

The significant point of the Pacific Finance case is that the absence of a resale, although it discharged the buyer, did not relieve the seller-assignor of liability. The seller-assignor continued to be liable because it had agreed to be so notwithstanding the absence of a resale. The statutory section (now, A.R.S. § 44–326), which declares that no agreement made by the "buyer before or at the time of the making of the contract * * * shall constitute a valid waiver of the [resale] provisions," was not considered to be applicable to the seller-assignor. That section would, however, have invalidated the same agreement if made by the buyer, because it was executed prior to the buyer's default. See O. S. Stapley Co. v. Rogers,

supra; Commercial Credit Co. v. Phoenix Hudson-Essex, Inc., supra; Waverly, Sayre & Athens Transp. Co. v. General Motors Truck Co., supra, and cases cited therein. The buyer is permitted to waive the resale provisions only by an agreement based on new consideration and made after default. See Adler v. Weis & Fisher Co., 218 N.Y. 295, 112 N.E. 1049; Mack International Motor Truck Corp. v. Thelen Trucking Co., 205 Wis. 434, 237 N.W. 75, 83 A.L.R. 952. See, generally, Annotation, 49 A.L.R.2d 15. Thus, the seller-assignor was held not to be the "buyer" or to be entitled to the rights of the buyer under the resale provisions of the Act.

The effect of the above conclusion—that only the buyer, and not the seller-assignor, is entitled to rely on the resale provisions of the Uniform Conditional Sales Act—is that the liability of Maestro herein continued, despite Wurlitzer's nonstatutory resale, for three reasons.

First, when Wurlitzer repossessed and sold the phonographs, Stevenson had been released by Wurlitzer from all liability under the contracts and notes. At that time Stevenson had no further rights in the phonographs and, accordingly, had no interests which were protectable under the Uniform Conditional Sales Act and, particularly, under the resale provisions thereof. His status as a party interested in the conditional sales contract as a "buyer" under the Uniform Conditional Sales Act had ceased when he was released of all liability by Wurlitzer, which had succeeded to all the rights of the seller formerly held by Maestro. Thus, when Stevenson, the buyer, no longer had any resale rights which he could enforce, and when no one else was entitled to enforce those rights, Wurlitzer, similarly, had no duty to make a statutory resale. There can be no duty without a correlative right in someone else to enforce that duty; it is an illusory "duty" and therefore no duty at all. Maestro's liability continued when Stevenson was released, not because of any provisions of the Uniform Conditional Sales Act, but because it had expressly agreed to be liable in that event.

Second, Stevenson's agreement with Wurlitzer, reasonably construed, constitutes a waiver of the resale provisions of the Act. As noted above, the buyer may validly waive statutory resale by an agreement entered into after default and supported by new consideration. The instant agreement was, by its terms, executed after Stevenson was "again in default to" Wurlitzer. The $5,000 payment made by Wurlitzer to Stevenson clearly furnishes new and adequate consideration. Waiver of the resale, though not expressly referred to, is implicit in the provision that Stevenson will deliver the phonographs to Wurlitzer at their then location and "will recommend that the owner of the location continue to deal with you [Wurlitzer] in the same man-

ner as the owner has dealt*h* with us [Stevenson]." The agreement further provided that "the property is suitable to the location where it is installed and used * * *." Stevenson also agreed "to surrender to you [Wurlitzer] all our right, title and interest in and to each location * * *." In the light of these provisions and the fact that the agreement released Stevenson of "all claims and demands of whatsoever nature," we conclude that Stevenson's delivery of the phonographs to Wurlitzer constituted a waiver of the resale provisions of the Act.

Third, the contract assignments and note endorsements executed by Maestro constituted a consent or agreement by Maestro to be liable to Wurlitzer even though Stevenson, because of Wurlitzer's noncompliance with the resale provisions of the Uniform Conditional Sales Act, is no longer liable on the notes. That such a consent is enforceable against the seller-assignor, such as Maestro, is clear from our decision in Pacific Finance Corp. of California v. Burkhart, supra. Lewis v. Esch, 155 Misc. 212, 279 N.Y.S. 77, holds to the same effect. There, the seller repossessed the property covered by a conditional sales contract but failed to sell it in accordance with the terms of the Uniform Conditional Sales Act. The court held that such failure rendered the buyers not liable, but that another defendant who guaranteed the buyers' obligation,

"under the terms of his guaranty, is not in a position to take advantage thereof. He guaranteed payment and waived foreclosure and possessory remedies. The other defendants [the buyers] could not waive these requirements, but he could and did." 279 N.Y.S. at page 80.

In the instant case Maestro agreed that Wurlitzer could "compound or release" Stevenson, could "release any and all rights against, enter into consolidating contracts with" Stevenson, and could hold Maestro liable without first proceeding against Stevenson. Although the above language does not expressly refer to a "discharge" of the buyer Stevenson, which here occurred by operation of law (see A.R.S. § 44-323), the terms "release" and "discharge" have been defined synonymously. See Black's Law Dictionary, "Discharge," "Release"; Albert's Shoes, Inc. v. Crabtree Construction Co., Fla., 89 So.2d 491, 492; Friedman v. Lockheed Aircraft Corp., D.C., 138 F.Supp. 530, 533. As stated in Davison v. Rodes, Mo.App., 299 S.W.2d 591, 594:

"The word 'release' * * * [i]n its literal sense * * * means 'discharge.'"

We conclude that the discharge of Stevenson was in the circumstances of this case within the intended scope of the written consents and waivers executed by Maestro in favor of Wurlitzer.

We hold that Wurlitzer's nonstatutory resale of the phonographs and equipment did not relieve Maestro from liability on the conditional sales contracts and notes.

The inapplicability of the resale provisions of the Uniform Conditional Sales Act does not mean, however, that the creditor who repossesses property which is security for an obligation may appropriate the property to his own use or to the prejudice of the obligors. Where the creditor willfully or negligently loses, misapplies or harms the security, the obligation is reduced pro tanto. See Restatement of Security, § 132; Britton, Bills and Notes, § 292. The conditional seller, or his assignee, who sells the property must "deal fairly so as to secure the best price reasonably possible * * *" (Annotation, 49 A.L.R.2d 15, 57) and is "obligated to make it bring its fair market value and account * * * for the difference between the amount * * * owed it and the fair market value of the car" (Motor Contract Co. v. Johnson, 61 Ga.App. 735, 7 S.E.2d 320, 321). See also Ford v. Commercial Securities Co., 223 Miss. 736, 79 So.2d 253, 256, suggestion of error overruled 80 So.2d 12; Dearborn Motors Credit Corp. v. Hinton, 221 Miss. 643, 74 So.2d 739, 741. Thus, Maestro, as the party liable on the notes secured by the phonographs, was entitled to have their reasonable value applied to the balance due on the notes.

Appellants have not assigned as error on this appeal (although they did raise it in their reply brief for the first time) that the price at which Wurlitzer sold the repossessed phonographs and equipment did not properly represent the fair market value of the property. Such issue was raised and evidence was offered thereon at the trial, however, and was implicitly rejected by the finding of the trial court that the proceeds of sale were applied to reduce the amounts due on the notes. We hold that there is sufficient evidence in the record to support the conclusion of the trial court.

The above having disposed of all of appellants' assignments of error, the judgment is affirmed.

STRUCKMEYER, C. J., and JACK L. OGG, Superior Court Judge, concurring.

NOTE: Justice J. MERCER JOHNSON having disqualified himself, the Honorable JACK L. OGG, Judge of the Superior Court of Yavapai County, Arizona, was called to sit in his stead and participate in the determination of this appeal.

UDALL, Justice (dissenting).

The court below, in finding in favor of the plaintiff in this case, treated the situation as a simple matter of a holder in due course of a negotiable instrument bringing an action against an unconditional endorser thereon. The majority herein has arrived

at the same result, on a somewhat conflicting assortment of grounds. Both courts have failed to recognize the true nature of the action as one by a conditional seller to recover a deficiency judgment upon conditional sales contracts.

The judgment of the trial court in this matter should be reversed, and judgment entered for the defendant, for two reasons:

*First*: The plaintiff has brought suit based on conditional sales contracts without complying with the terms of the Conditional Sales Act (A.R.S. §§ 44–301 to 44–330) governing suits upon such contracts;

*Second*: Even if the Conditional Sales Act did not apply to this transaction, the plaintiff should not recover, since it has failed to bear its burden of proving that the resale of the merchandise was fairly conducted.

### The Conditional Sales Act

At the outset it should be noted that the fact that the action is nominally upon notes secured by conditional sales contracts— rather than upon the contracts themselves— does not remove the case from the provisions of the Conditional Sales Act. The notes and the contracts, being part of the same transaction, are not separable. They must be taken together to determine the legal effect of either. See, First Prize, Inc. v. Fireman's Fund Ins. Co., Tex.Civ.App., 269 S.W.2d 939; Friendly Consumer Discount Co. v. Foell, 39 N.J.Super. 410, 121

A.2d 434, 437, expressly overruling Superior Finance Corp. v. John A. McCrane Motors, 115 N.J.L. 401, 180 A. 842; Restatement, Contracts, § 235(c). The note is founded upon the obligation created by the contracts and the extent of that obligation must be determined in the light of the governing principles of the Conditional Sales Act. With this in mind, we shall apply the relevant provisions of that Act to the facts of this case.

On the central point of the case the law of this state is clear: In order for a conditional seller who has repossessed and resold the goods to perfect his right to recover a deficiency judgment, he must comply with the statutory resale provisions, viz., notice, publicity, sale at public auction, etc. A.R.S. §§ 44–319 and 44–322. Unless these procedures are followed, "the obligation of the buyer is discharged." A.R.S. § 44–323. Commercial Credit Co. v. Phoenix Hudson-Essex, Inc., 33 Ariz. 56, 262 P. 1; Kolehouse v. Conn. Fire Ins. Co., 267 Wis. 120, 65 N.W.2d 28, 46 A.L.R.2d 983; Capitol District L. A. W. Corp. v. Blake, 136 Misc. 651, 241 N.Y.S. 476; Mack International Motor Truck Corp. v. Thelen Trucking Co., 205 Wis. 434, 237 N.W. 75, 83 A.L.R. 952

The majority gives three reasons why the plaintiff herein, who admittedly stands in the position of a conditional seller, should be allowed to circumvent the statutory policy in this case:

1. The action was not brought against the "buyer" under the conditional sales contract, but against a guarantor thereon. The Conditional Sales Act does not expressly afford protection to a guarantor. Therefore, the majority reason, no one had a right to "enforce" the statutory duties of the seller in respect to the resale provisions, since the right is personal with the buyer, and the buyer has been released.

2. The resale requirements were fully waived by the buyer, who had the power legally to waive them.

3. Maestro expressly consented to remain liable to Wurlitzer even though Wurlitzer, by its failure to obey the statutory mandate, had effected a discharge of the contractual obligations sued upon.

Each of these propositions is erroneous. They will be considered separately in the order presented.

1. *Applicability of Conditional Sales Act to action against a guarantor.* To deny that the protection of A.R.S. § 44–323 is available to a guarantor of a buyer's obligations to ignore the holding of this Court in Commercial Credit Co. v. Phoenix Hudson-Essex, Inc., 33 Ariz. 56, 262 P. 1, wherein the Court said:

"* * * Plaintiff having pleaded that it had parted with automobile to another for a valuable consideration, under circumstances inconsistent with a statutory resale, it was in effect an allegation that it had elected to deal with the goods as its own property, and in such case, by the terms of section 23 [A.R.S. § 44–323], supra, the buyer was discharged of any obligation under the contract. Such being true, the guarantor was discharged from its original obligation to pay the debt of the buyer. * * *" 33 Ariz. 61, 262 P. 3.

See, also, to the same effect, Commercial Credit Corp. v. Byerly, 131 Misc. 872, 229 N.Y.S. 283; Ulster Finance Corp. v. Schroeder, 230 App.Div. 146, 243 N.Y.S. 682; Central Acceptance Corp. v. Frye, 103 W.Va. 689, 138 S.E. 369; Central Acceptance Corp. v. Massey, 107 W.Va. 503, 148 S.E. 864; Commerce Union Bank v. Jackson, 21 Tenn.App. 412, 111 S.W.2d 870; and see Britton, Bills and Notes, 1092.

It is manifest that this Court, in the Commercial Credit case, supra, considered that the limitation imposed by the statute upon the seller's action for a deficiency judgment applied to *any* action to recover upon the obligation created by the conditional sales contract. Compliance with the statutory resale terms is a condition precedent to the recovery of a deficiency by the seller from *either* the buyer *or* the guarantor—in the words of the statute (A.R.S. § 44–322), "* * * from the buyer, or from anyone who has succeeded to the obligations of the buyer."

The majority state that the seller's duty to comply with the statutory procedures can only be "enforced" by the buyer, and that since in this case the buyer has been removed from the picture by mutual consent of the parties, that duty has become a nullity. A duty which cannot be enforced, they say, is illusory. In taking this position the majority lose sight of the nature of the duty involved. This is not a duty which needs to be "enforced". In regard to a conditional sale such as this, the statute does not speak in terms of compulsion. Rather the seller is given an election. He may either keep the goods or he "may voluntarily resell the goods for account of the buyer on compliance with [the resale] requirements." A.R.S. § 44–320. The seller is not required to obey the statute. However, his right to recover a deficiency is conditioned upon his following the statutory steps. A.R.S. §§ 44–322 and 44–323. If he fails to do as the statute directs, it is not necessary that he be compelled to do so; he simply loses his right to sue upon the contracts for a deficiency. This statutory mandate is entirely self-executing; it does not require "enforcement" beyond the establishment of the affirmative defense that the plaintiff seller failed to do what the statute directed.

The majority opinion declares that the sole intention of the Conditional Sales Act is to protect the buyer from the seller, and that all the provisions must be considered from the buyer's point of view only. Comparison of the statutory scheme with the law as it existed prior to the enactment of the Conditional Sales Act indicates that this is an over-simplification of the legislative intent. One very significant effect of the Act has been to establish a reasonable means by which a conditional seller can repossess and resell the goods while still preserving the right to sue the buyer of the contract. Under the general common law the seller, upon the default of the buyer, was often faced by an election whereby he had to choose between pursuing the security or asserting his contractual rights. Baer v. General Motors Acceptance Corp., 101 Fla. 913, 132 So. 817; Russell v. Martin, 232 Mass. 379, 122 N.E. 447; State Bank of Black Diamond v. Johnson, 104 Wash. 550, 177 P. 340, 3 A.L.R. 235; Beck v. Shepherd Fruit Co., 19 Cal.App. 2d 590, 66 P.2d 188; Frankel v. Rosenfield, 95 Cal.App. 647, 273 P. 122; I. X. L. Stores Co. v. Moon, 49 Utah 262, 162 P. 622; Crute v. La Porte Discount Corp., 89 Ind.App. 573, 167 N.E. 542; and see Williston, Sales, § 579(b); 78 C.J.S. Sales § 600(b). The Act affords protection to the seller by allowing him to do both, *but only upon compliance with the statutory resale requirements.* West Virginia Mack Sales Co. v. Brown, 139 W.Va. 667, 81 S.E. 2d 103, 108. The seller's failure so to comply results inevitably in the loss of his cause of action.

2. *Waiver of rights by the buyer.* Contrary to the majority opinion, it is our feeling that the buyer (Stevenson) *could not* and *did not* effectively waive the statutory requirements. The majority has shown that, by the release agreement between Stevenson and Wurlitzer, the buyer was freed from all obligations on the contracts. They also emphasize that the necessary result of this release was to deprive the buyer of any rights whatever in the security. Yet the clear import of the majority holding on this point is that the buyer may waive rights *which he does not possess,* to the detriment of his guarantor. Thus the buyer, who has no remaining liability, is allowed to enlarge the liability of the surety. The law, as we understand it, is that no waiver of legal rights by one party to a transaction can be effective to deprive another party of protection which may accrue to him. See, Gholson v. Savin, 137 Ohio St. 551, 31 N.E.2d 858, 139 A.L.R. 75. This must be so, particularly where the waiver can have no effect upon the party who purports to release the right, for one may not waive a right which he does not possess. Arizona Title Guarantee & Trust Co. v. Modern Homes, Inc., 84 Ariz. 399, 330 P.2d 113.

But even assuming that Stevenson could validly waive the legal protection as far as the defendant was concerned, it is clear upon the facts of this case that he did not do so. It is well settled that, in spite of the statutory prohibition against such waivers by the buyer (A.R.S. § 44–326), it is possible for the buyer to agree to a resale procedure which varies from the statutory plan. Adler v. Weis & Fisher Co., 218 N.Y. 295, 112 N.E. 1049; Waverly, Sayre & Athens Transp. Co. v. General Motors Truck Co., D.C., 36 F.Supp. 285. However, in order for such a waiver to be effective, certain requirements must be met—the waiver of statutory conditions must come after default, it must be clearly intended, and it must be given for adequate new consideration running from the seller to the buyer. Waverly, Sayre & Athens Transp. Co. v. General Motors Truck Co., supra. Here the alleged waiver did occur after default, but it was *not* express, *nor* was there any consideration which could support such agreement.

The terms of the release agreement, which are said to constitute the waiver, make no mention of any such waiver—nor do they indicate just what is being waived. It does appear that Stevenson was willing to forego at least one of the statutory requirements—that which calls for the repossessed merchandise being physically present at the site of the sale. Such a waiver may be valid. Bulldog Concrete Forms Sales Corp. v. Taylor, 7 Cir., 195 F.2d 417, 49 A.L.R.2d 1. However, there is no reason to believe that his willingness to overlook this particular defect imported an intention to forego all the statutory pro-

tections. The law of Arizona is firmly established that a waiver is "a voluntary * * * relinquishment of a known right." In re Brandt's Estate, 67 Ariz. 42, 190 P.2d 497, 501; Yuma County v. Arizona Edison Co., 65 Ariz. 332, 180 P.2d 868. No such relinquishment appears on the face of this document, and an implication of such a waiver is not justified.

If any waiver was intended by Stevenson, it could only be valid if given for valuable consideration running from the seller to the buyer. Waverly, Sayre & Athens Transp. Co. v. General Motors Truck Co., supra. There was no such consideration in this case. The majority rely upon the fact that, at the time of the release agreement, $5,000 was paid to Stevenson. This, they say supplies the requisite consideration. This analysis fails for two reasons: First, the parties did not treat the payment as consideration for a waiver; they expressly stated that the purpose of the payment was to induce Stevenson to disclose the locations of the machines. No mention of a waiver appears in connection with this payment. A payment bargained for and made for one purpose cannot supply the consideration lacking in an entirely separate aspect of the transaction. Yuma National Bank of Yuma v. Balsz, 28 Ariz. 336, 237 P. 198; and see generally, Annotation, 139 A.L.R. 1036. Second, the $5,000 did not come from Wurlitzer, to which the waiver was allegedly given, but from Maestro and another distributor-guarantor. In charging the payment against these accounts, Wurlitzer treated it as a "collection cost." It cannot now contend that the money thus expended was in reality consideration given for a waiver which was directly opposed to the interests of the parties against whom it was charged.

3. *Consent of defendant to continuing liability.* Reference has previously been made to Commercial Credit Co. v. Phoenix Hudson-Essex, Inc., 33 Ariz. 56, 262 P. 1. That case involved a fact situation quite similar to that now before us. There the guarantor had consented to remain liable on the original contract to its full extent, in spite of known defects in the resale practices of the plaintiff. When action was brought against the guarantor upon the endorsement of the conditional sales contract, the defendant demurred on grounds that the obligation sued upon had been extinguished through noncompliance with the statutory resale provisions. The demurrer was sustained, and on appeal this Court affirmed that judgment. This decision is clear authority for the proposition that no action upon a conditional sales contract can be maintained without compliance with the Conditional Sales Act—even though the defendant is a guarantor who has consented to the defective performance by the plaintiff.

In Pacific Finance Corp. of California v. Burkhart, 56 Ariz. 383, 108 P.2d 380,

relied upon heavily by the majority, this Court based its reversal of a judgment in favor of the defendant guarantor upon a factual distinction which removed that case from the rule set down in Commercial Credit Co. v. Phoenix Hudson-Essex, Inc., supra. In the earlier case, the defendant had promised to assume the obligation of the buyer. In the latter case, the defendant's undertaking was much broader: the defendant promised that he himself would *purchase* the repossessed merchandise from the plaintiff, for the full amount then owed under the contract, if delivery were made to him within a designated period after default. Of this agreement, the Court said:

> " * * * This is more than a guaranty; it is an independent agreement to become the principal debtor under the circumstances set forth in the assignment. * * * We are of the opinion the complaint sets up an independent agreement by the defendant to assume liability as a principal debtor, and not as a guarantor or surety, under the circumstances alleged therein of repossession and delivery to him, * * *." 56 Ariz. 391, 392, 108 P.2d 383.

It is clear that the distinction upon which the decision rested was that the defendant in that case actually agreed to become a *purchaser* of the merchandise, rather than, as in the Commercial Credit case, merely

guaranteeing the contractual performance by the buyer. The defendant's liability was not based upon the conditional sales contract which he guaranteed, but upon *his own* contract of purchase.

In the instant case, any liability of the defendant must arise from the conditional sales contracts themselves. *There was no independent undertaking by the guarantor to become the principal debtor through actual purchase and delivery of the merchandise.* In fact, Maestro was offered a chance after the default to repurchase the machines on its own account for some $50,-000, thus cancelling the conditional sales obligations, and it refused the offer. Maestro's sole promise was to "guarantee the payment promptly when due of the amount of each and every installment payable thereunder and the payment on demand of the entire unpaid balance in the event of any default by the buyer * * *." The fact that the endorsement of the contracts also contained a broad waiver of defenses is not sufficient to transform what is clearly a *guaranty* into an "independent agreement", in the terms of the Pacific Finance case. The distinction drawn in that case is inapplicable to the facts before us.

The principle of law is beyond dispute that a guarantor is entitled to stand on the terms of its contract. Bank of Italy v. Merchants' National Bank, 236 N.Y. 106, 140 N.E. 211; Chozen Confections, Inc. v.

Johnson, 221 N.C. 224, 19 S.E.2d 866; Kidd-Scruggs Co. v. Tyler Hotel Co., Tex. Civ.App., 270 S.W. 566. It is equally clear that the liability of a guarantor is delimited by the obligation arising under the contract which he guarantees and does not survive the discharge of that contractual debt. Valley National Bank of Phoenix v. Shumway, 63 Ariz. 490, 163 P.2d 676; Merchants National Bank v. Stone, 296 Mass. 243, 5 N.E.2d 430; Baer v. General Motors Acceptance Corp., supra; Commercial Credit Co. v. Phoenix Hudson-Essex, Inc., supra. Thus, when the buyer's obligation under the sales contract was extinguished, in accordance with A.R.S. § 44–323, it necessarily follows that the liability of the guarantor is also discharged. This result is required by our holding in the Commercial Credit case, supra.

### Fairness of Resale

The majority, having determined that the clear provisions of the Conditional Sales Act do not apply to this transaction, maintain that the only protection available to the defendant herein is its right to demand that the plaintiff, in reselling the goods, " * * * deal fairly so as to secure the best price reasonably possible." Citing Annotation, 49 A.L.R.2d 15, 57. Although we do not agree that the sole duty of the plaintiff in this regard was to deal fairly with the security, we do feel that even upon this basis the record before us requires a reversal.

The majority concede that Wurlitzer did have the duty and obligation, at the time of the sale of the property, to make it bring the fair market value and to account to Maestro for the difference between the amount owed it and the fair market value of the property. However, the plaintiff herein has been allowed to recover without having made any affirmative showing that this duty has been obeyed. If such duty is owed to defendant, then that party should be allowed to enforce the performance thereof. Otherwise, to use the language of the majority, "[i]t is an illusory 'duty' and therefore no duty at all."

The sale in this case was made at private sale without notice, and all of the facts surrounding said sale were peculiarly within the knowledge of Wurlitzer. Defendant was not informed of the time or place of the sale, nor was it told to whom the goods had been sold. There is nothing in the record to show that the property was sold for its fair market value or that Maestro was given credit on its account for the fair market value of the property. The duty was upon Wurlitzer to affirmatively plead and prove that it had met its obligation under the law to sell the property for the fair market value and to account for the same. While it is often presumed that the price received at a sale fairly conducted according to reasonable business methods is a fair price, the burden is properly upon the seller under such circumstances to make a prima

facie showing that the security has been reasonably disposed of. (Cf., Obrecht v. Crawford, 175 Md. 385, 2 A.2d 1, 119 A. L.R. 1129; Wisconsin & Arkansas Lumber Co. v. Buschow Lumber Co., Mo.App., 236 S.W. 410; Derami, Inc. v. John B. Cabot, Inc., 273 App.Div. 717, 79 N.Y.S.2d 664; Texas & Louisiana Lumber Co. v. Rose, Tex.Civ.App., 103 S.W. 444; 3 Williston, Sales, § 547; all dealing with resale of goods after a refusal by the buyer to accept them; compare also, Knudsen Music Co. v. Masterson, 121 Utah 252, 240 P.2d 973, in which a proper showing of good faith was made in a situation very similar to the instant case.) This is particularly so when, as here, the means of knowing and of proving the reasonable fairness of the sale is peculiarly within the knowledge of the plaintiff seller. Wilson v. Moline, 229 Minn. 164, 38 N.W.2d 201; Lake v. Callis, 202 Md. 581, 97 A.2d 316. The finding of the lower court that the proceeds of the sale were applied to reduce the amount due on the notes gives no indication one way or the other that the sale was fairly conducted and that the property sold for its fair market value.

These fundamental facts being true, it is our opinion that the judgment of the trial court should be reversed with directions to dismiss plaintiff's complaint.

PHELPS, J., concurs and joins in this dissent.